# GULF & WESTERN INDUSTRIES, INC.

v.

## The UNITED STATES.

No. 384–77.

United States Court of Claims.

Dec. 17, 1980.

Thomas E. Harrison, Jr., New York City, atty. of record, for plaintiff. George J. Battersby, New York City, of counsel.

Frances L. Nunn, Washington, D. C., with whom was Asst. Atty. Gen. Alice Daniel, Washington, D. C., for defendant. Marsha D. Peterson, Washington, D. C., of counsel.

Before COWEN, Senior Judge, and KUNZIG and SMITH, Judges.

## ON THE PARTIES' CROSS–MOTIONS FOR SUMMARY JUDGMENT

PER CURIAM:

This case comes before the court on plaintiff's request, filed March 19, 1980, for review by the court of the recommended decision of Trial Judge C. Murray Bernhardt, filed January 28, 1980, pursuant to Rule 166(c) on defendant's motion and plaintiff's cross-motion for partial summary judgment, having been submitted to the court on the briefs and oral argument of counsel. Upon consideration thereof, since the court agrees with the trial judge's recommended decision, with modifications therein by the court, it hereby affirms and adopts the recommended decision, as modified and hereinafter set forth, as the basis for its decision in this case. Accordingly, as to Count 11 of plaintiff's First Amendment to Petition, plaintiff's cross-motion for summary judgment is denied, defendant's motion for summary judgment is granted, and Count 11 is dismissed.

OPINION OF TRIAL JUDGE

BERNHARDT, Trial Judge:

This case comes before the court for Wunderlich Act review [1] of the decision of the Armed Services Board of Contract Appeals (Board) in ASBCA No. 22204 (79–1 BCA ¶ 13,706) which granted in part and denied in part the government's plea in bar of plaintiff's claims under the Changes clause of its supply contract. Count 11 of plaintiff's First Amendment to Petition herein challenges the Board action.[2] The review is pursuant to the parties' cross-motions for partial summary judgment only as to Count 11 of the First Amendment to Petition. The Board decision is affirmed.

On July 15, 1971, plaintiff contracted to furnish the Army 515 155 mm XM–549 warheads for $79,191.55. The standard Changes clause in the contract provided in relevant part:

> * * * Any claim by the Contractor for adjustment under this clause must be asserted within 30 days from the date of receipt by the contractor of the notification of change; *provided*, however, that the Contracting Officer, if he decides that the facts justify such action, may receive and act upon any such claim asserted at any time prior to final payment under this contract. * * *

Flinchbaugh Products, the division of Gulf & Western performing the contract, encountered difficulties in developing a heat treating process for the HF–1 steel required by contract specifications. Also a dispute arose concerning the interpretation of inspection requirements under the contract, the government maintaining that the contract required plaintiff to perform a magnetic particle inspection on the interior surface of each warhead, and plaintiff contending the contrary.

Plaintiff presented no formal claims to the contracting officer until June 23, 1977, when it alleged five causes of action, viz: defective specifications, breach of implied warranty, superior knowledge of the government, commercial impossibility, and the extra magnetic particle inspection requirement. Concluding that the first four claims concerned production problems under the contract, and that the fifth concerned contract interpretation, the Board aggregated the production claims as one which it termed the "defective specifications" claim. The magnetic particle inspection claim retained its identity as a separate independent claim unrelated to the defective specifications claim. The consolidation was not prejudicial to plaintiff.

The Board found that final payment under the contract occurred on October 19, 1972, when plaintiff received the government's check of October 10, 1972, in payment of what both parties then regarded as the final delivery under the contract.[3] The issue then presented for determination was which if any of plaintiff's claims was asserted prior to final payment. The Board held that by letter of May 18, 1972, plaintiff had manifested a present intention to seek recovery with respect to the magnetic particle inspection claim. As to the defective specification claim, however, it found that none of plaintiff's oral or written communications prior to final payment of October 19, 1972, manifested a present intention to seek an equitable monetary adjustment of contract price, nor place the contracting officer on actual or constructive notice that such a claim would be filed.

---

1. 68 Stat. 81, 41 U.S.C. §§ 321–22 (1970).

2. Plaintiff filed its original ten count petition on July 15, 1977. The principle allegations set forth in the original petition are similar, if not identical, to those later argued before the Board as grounds for equitable relief under the contract. Subsequent to the Board's decision presently under review, plaintiff filed, on April 17, 1979, its First Amendment to Petition adding Count 11. Count 11 challenges the Board's decision and is therefore the sole subject of review as set forth in the parties' cross-motions for summary judgment directing the court's attention to the merits of the Board's ruling.

3. Pursuant to a bilateral modification effective September 27, 1972, the parties agreed to a convenience termination of the contract. The modification provided that the previous August 25 delivery was to be the last, and that the remaining 78 warheads scheduled under the contract were cancelled. Modification No. P00003.

Accordingly, the Board sustained the government's plea in bar as to the defective specifications claim, but denied the plea with respect to the magnetic particle inspection claim and remanded the latter to the parties for eventual trial on the merits. Upon plaintiff's motion the Board proceedings have been stayed pending resolution of the present review.

The issues for decision by the court are:

1. (a) Did the existence of the unresolved inspection claim suspend the final payment until its resolution, thus preventing final payment from occurring on October 19, 1972, as found by the Board?

(b) If final payment did occur on October 19, 1972, may plaintiff nevertheless assert thereafter new and different claims unrelated to the preserved magnetic particle inspection claim?

2. If final payment did occur and plaintiff is precluded from bringing additional and unrelated claims after October 19, 1972, did it nevertheless assert constructively a claim for defective specifications prior to that day by manifesting to the contracting officer, actually or constructively, a present intention to seek recovery under the contract?[4] The answer to each question is in the negative.

Although no universal definition of the term final payment is known, the court and the Board have generally adopted the common sense view that after all deliveries are complete and a payment is then made of the contract balance, such payment is considered final as the term is used in the Changes clause. *Jo-Bar Mfg. Corp. v. United States*, 210 Ct.Cl. 149, 535 F.2d 62 (1976); *Specialty Assembling & Packing Co. v. United States*, 156 Ct.Cl. 252, 298 F.2d 794 (1962); *United Ammunition Container, Inc.*, ASBCA No. 21886, 78–2 BCA ¶ 13,253; *Machinery Associates, Inc.*, ASBCA No. 14510, 72–2 BCA ¶ 9476. To paraphrase the Board in *Machinery Associates, Inc., supra*, when a payment is made in the normal course of events following delivery, acceptance, and the submission of an invoice requesting payment such as in the present case, that payment is a final payment as contemplated by the standard Changes clause.

■ Determining what constitutes the "fact of final payment" depends upon the totality of facts and circumstances of a particular case. To reach this determination, we apply the standard of whether a trier of fact could reasonably and logically consider a certain payment to be the "final payment". The Board herein found that final payment reasonably occurred on October 19, 1972. It cannot be said that its determination is not factually supported in the record or is legally erroneous.

Flinchbaugh delivered its eighth, and what proved to be its final shipment under the contract, on August 25, 1972. Thereafter, a bilateral modification was entered into, effective September 27, 1972, whereby the parties agreed to a convenience termination of the remaining 78 units scheduled under the contract. The fifth and final payment under the contract was issued by check dated October 10, 1972, which reached the plaintiff on October 19, representing payment for the delivery of 58 warheads on August 25. When added to the four previous partial payments, the total corresponded to the complete contract price as modified on September 27, 1972. The Board found that the "Advice of Payment" voucher which followed the check, although inadvertently marked "6th partial", reflected a clerical error and did not materially affect the character of the payment as final. Pursuant to the requirement of the Material Inspection and Receiving Report, subparagraph 1–301, Block 2(c) of ASPR, Appendix I, the plaintiff submitted a corrected copy

---

4. A third possible issue is that of the government's failure to allege that it would be prejudiced if plaintiff was permitted to assert all of its claims belatedly or otherwise. Plaintiff cites a line of cases purportedly standing for the proposition that the notice provisions of the Changes clause are waived where the government fails to allege and prove prejudice. These cases concern the 30-day notice requirement for actual changes and do not address at all the final payment doctrine which stands as an absolute bar to subsequently asserted claims. *United Ammunition Container, Inc.*, ASBCA No. 21886, 78–2 BCA ¶ 13,253.

of DD Form 250 prepared for its August 25, 1972, shipment identifying it as the final *shipment* under contract 0048.

Based upon the Board's findings, additional support from the record, and the plaintiff's lengthy delay of almost 5 years in filing a formal defective specifications claim, the Board's conclusion that the October 19, 1972, payment, under all the facts and circumstances, constituted "final payment" is affirmed.

■ It is well established that—

Where the contracting officer knows, or is properly chargeable with knowledge, that at the time of final payment the contractor is asserting a right to additional compensation, even though formal claim therefor has not been filed, the fact of final payment does not bar consideration of a later formal claim. * * * *Jo-Bar Mfg. Corp. v. United States, supra,* 210 Ct.Cl. at 157, 535 F.2d at 66.

However, it does not follow therefrom that after final payment the contractor is privileged to make for the first time new and different claims unrelated to those asserted prior to final payment.

The plaintiff cites previous Board decisions (principally three: *Leader Mfg. Co.,* ASBCA No. 4416, 58–2 BCA ¶ 1877, *Lansdale Tube Co.,* ASBCA No. 5837, 61–2 BCA ¶ 3260, and *Aerodex, Inc.,* ASBCA No. 7121, 1962 BCA ¶ 3492) for the proposition that the existence of a previously asserted and timely claim "suspends" final payment pending the resolution of the outstanding claim. Those decisions differ significantly from the instant case. In each of them it was the precise claim asserted before final payment that was held to be preserved notwithstanding final payment. In none of them does it appear that the Board con-

sidered the survival of unrelated claims asserted beyond the date of the alleged final payment. Furthermore, the Board opinion under review overruled the two decisions in which the ASBCA allowed the tardy assertion of unrelated claims.[5] Loose language in the cited opinions suggesting that final payment had been suspended must be considered surplus to the holdings in the cases.

Despite plaintiff's arguments to the contrary the Board in *Machinery Associates, Inc.,* ASBCA No. 14510, 72–2 BCA ¶ 9476, recognized that final payment had indeed occurred. There the Board stated:

* * * This payment was the final payment as that term is used in the Changes clause. *Id.* at 44,140.

The Board allowed the preservation of several claims beyond the date of final payment because each claim had been adequately asserted previously. It did not expressly or impliedly allow the assertion of new and unrelated claims, nor did it hold that final payment had been suspended.

There may be some confusion concerning the issue of the suspension of final payment in some of the administrative boards' decisions.[6] This court has never held that a contractor may circumvent a well recognized time limitation on the filing of claims on the grounds that the timely assertion of one claim operates as a door stop holding open indefinitely beyond final payment the right to assert for the first time unrelated claims not previously raised. Such strategic manipulation would defeat the purpose of the Changes clause.

■ In answer to the first question above, then, the existence of the unresolved magnetic particle inspection claim did not prevent final payment from occurring on October 19, 1972. Final payment having

---

5. *Onsrud Machine Works, Inc.,* ASBCA No. 14800, 71–2 BCA ¶ 9013 and *Progressive Metal Equipment, Inc.,* ASBCA No. 15954, 72–1 BCA ¶ 9301.

6. Both parties cite the Department of Transportation CAB Board decision in *Historical Services, Inc.,* 72–2 BCA ¶ 9592. While in this case it is the government and not the contractor that has an unresolved outstanding claim asserted

prior to what would normally be considered final payment, the Board opinion cites with approval the reasoning in *Onsrud Machine Works, Inc., supra,* and *Progressive Metal Equipment, Inc., supra,* fn. 5, to the effect that final payment is suspended whenever a claim is outstanding. We concur with the ASBCA's rejection of that reasoning as it applies to claims by the plaintiff.

occurred, plaintiff was precluded from thereafter asserting claims unrelated to the magnetic particle claim. The Board's findings that the defective specifications claim is unrelated to the inspection claim, that final payment occurred on October 19, 1972, and that plaintiff may not bring a claim beyond the date of final payment is affirmed.

■ In order for a constructive change claim to be preserved beyond the date of final payment, the contractor must manifest a present intention to seek recovery under a claim of right under the contract. *Jo-Bar Mfg. Corp. v. United States, supra; Specialty Assembling and Packing Co. v. United States, supra.* As a corollary, where the contracting officer knows, or is properly chargeable with knowledge, that at the time of the final payment the contractor is asserting a right to additional compensation, even though no formal claim has been filed, the fact of final payment does not bar consideration of a later formal claim. There are no special words or formal means of communication required in presenting a claim. *Id.*

In order to determine whether or not a timely claim has been asserted the Board, and in turn the court, will construe liberally the oral and written communications between the parties. *Hoel-Steffen Constr. Co. v. United States*, 197 Ct.Cl. 561, 456 F.2d 760 (1972). Invoking this principle the plaintiff cites its letter of May 9, 1972, its DD Forms 375 for June and July 1972, and the testimony of the contracting officer at the Board hearing on February 1, 1978.

■ The May 9, 1972, letter and the DD Forms 375 (production progress reports) were characterized by the Board as containing "Ambiguous and oblique references to extensive efforts not contemplated by the contractor and to unanticipated manufacturing difficulties * * *." The Board's conclusion was correct that the documents did not represent the assertion of claims for equitable adjustments in the contractually prescribed manner. They do not meet the test enunciated in *Specialty Assembling & Packing Co., supra,* to the effect that a

claim registered pursuant to a Changes clause of a government contract need not specify that clause particularly as a basis for relief, but it must bear some of the attributes of a claim itself, purporting to be in the nature of a claim as of a legal right as opposed to a request for grace. Plaintiff's alleged defective specifications claim does not qualify. The May 9, 1972, letter was drafted in response to a Defense Supply Agency letter requesting plaintiff to show cause why the contract should not be terminated for failure to perform. Therein plaintiff ascribes its reasons for delay in performance principally to its difficulty in developing a satisfactory heat treating process for the HF-1 steel. Nowhere does the letter even hint that plaintiff thinks it has or intends to file a claim for equitable relief under the contract. At the most one might infer that plaintiff would need more time to perform because of delays, although no such request appears. Similarly the DD Forms 375 indicates that plaintiff was encountering production problems, but nowhere do they suggest that a claim is forthcoming or that one is warranted.

A fair reading of both the May 9 letter and the DD Forms leaves the sole impression that plaintiff is simply excusing itself for delays in contract performance, rather than placing the contracting officer on notice of a future equitable claim. The documents cannot reasonably be interpreted as asserting a claim for equitable relief under the contract.

Finally, plaintiff contends that the testimony of the contracting officer before the Board proves that the contracting officer knew that plaintiff had asserted a claim for defective specifications. It does not.

■ During cross-examination of the contracting officer the witness' attention was directed to a memo he prepared on November 15, 1974, stating—

* * * Flinchbaugh Products, Inc. has had many problems using HF–1 steel, had submitted a substantial claim against the Government under an R&D contract and has verbally indicated to me that

another claim will be filed in the near future.

Counsel claims to have elicited that the contracting officer was referring to the contract in suit. Later in the transcript the same witness testified that the R&D contract to which he referred in his memo was not the contract in suit, but rather some other contract not even subject to his administration. Plaintiff has not carried its burden of proving that the Board's failure to give substantial weight to the testimony of the contracting officer as specifically cited by counsel in its brief is unsupported by the record.

Neither the May 9, 1972 letter, nor the DD Forms 375, nor the testimony of the contracting officer establish the assertion of a constructive claim for defective specifications prior to final payment, even when viewed in a light most favorable to the plaintiff.

Count 11 of the petition is dismissed.