GULF & WESTERN INDUSTRIES, INC.

v.

The UNITED STATES.

No. 65–80C.

United States Court of Claims.

Feb. 24, 1982.

William J. Spriggs, Washington, D.C., for plaintiff; Robert E. Gregg, McKenna, Conner & Cuneo, Washington, D.C., Thomas E. Harrison, Jr., and Gregory J. Battersby, New York City, of counsel.

Elizabeth Langer, Washington, D.C., with whom was Asst. Atty. Gen., J. Paul McGrath, Washington, D.C., for defendant.

Before FRIEDMAN, Chief Judge, and BENNETT and SMITH, Judges.

## ON DEFENDANT'S REQUEST FOR REVIEW

FRIEDMAN, Chief Judge:

The defendant has requested interlocutory review, pursuant to Rule 53(c)(2)(ii), of an order of Trial Judge Bernhardt remanding this contract case to the Armed Services Board of Contract Appeals ("the Board") for a trial *de novo* before a different hearing member of the Board. The trial judge took the action because of *ex parte* contacts between the Board member who wrote the Board's opinion and attorneys for the government.

The defendant does not oppose a remand to the Board. It argues, however, (1) that only the court and not one of its trial judges may direct such a remand, and (2) that the remand should not be for a trial *de novo* but for the limited purpose of determining whether the Board member was biased and prejudiced. We agree with the defendant's first contention but disagree with its second one.

I.

This case grows out of a contract by which the plaintiff agreed to supply the government with military material at a charge of approximately $4 million. After the plaintiff completed performance of the contract, it sought from the contracting officer an equitable adjustment of more than $2 million. The contracting officer denied any adjustment, and the plaintiff appealed to the Board.

After a hearing, the Board on January 23, 1980, denied the appeal. The lengthy opinion of the Board was written by Administrative Judge Grossbaum, who had presided at the hearing, and was concurred in by three other members of the Board. The plaintiff sought review in this court of the Board decision. In its amended petition, filed in August 1980, the plaintiff challenged the Board's decision on various grounds, including the claims that the Board improperly had denied discovery and had excluded relevant evidence.

On January 19, 1981, according to a contemporary memorandum she prepared, the lawyer in the Department of Justice han-

dling this case received a telephone call from Judge Grossbaum. The memorandum reported that Judge Grossbaum

> stated that he wanted to talk to me about the case because, as he emphasized, "I don't want this case to be lost in the Court of Claims." He emphasized that he had more than an academic interest in the outcome of the litigation. He stated that, in his opinion, plaintiffs violated Court of Claims rules, because they did not take exception to any particular findings, but rather took general exception to the findings of fact. He also repeated several times that the papers on file in the case are terse.

Four days later, the attorney reported in a second memorandum, Judge Grossbaum again called her. After asking about the briefing schedule, Judge Grossbaum

> stated again that he would like to talk to me about the case and I replied that I had been instructed by my supervisors to reply to his inquiry in writing and that further discussions would be inappropriate. He immediately dropped the subject of the briefing schedule and stated that I should not feel compelled to write a letter. I replied that I would follow the instructions of my supervisors in this matter. He then terminated the conversation rather abruptly.

Following these conversations, the Department of Justice asked the Office of the Judge Advocate General of the Army whether any members of that office had had *ex parte* conversations about this case with Judge Grossbaum. The Office responded that two members of its staff had discussed the case with Judge Grossbaum. The first telephone contact was in January 1980, shortly after the Board had rendered its decision, in which "Judge Grossbaum discussed in considerable detail portions of his opinion and the source of the support in the record for the finding of fact number 122." The officer who had that conversation also reported that "[f]ollowing this conversation, Judge Grossbaum has spoken with me several other times requesting that I furnish him a copy of the pleadings in the Gulf and Western case."

In February 1981, the Department of Justice informed the plaintiff's lawyer about Judge Grossbaum's telephone conversations with its attorney and enclosed copies of her two memoranda discussing the conversations. In August 1981, the plaintiff filed in this court a motion for a trial *de novo*. The plaintiff asserted that the *ex parte* contacts violated the rules of the Board and the standards of conduct for Department of Defense employees. It also cited certain canons of the American Bar Association's Code of Judicial Conduct. The motion stated that "ASBCA Judge Grossbaum's ex parte contacts with the government attorneys responsible for this case give rise to the appearance of prejudice and bias and raise questions regarding Judge Grossbaum's impartiality in reaching his appealed-from decision .... Because of the appearance of bias and prejudice and the questionable impartiality of the Board's decision, plaintiff was denied basic due process."

The trial judge to whom this case was assigned remanded the case to the Board "with instructions to conduct a trial *de novo* before a different hearing member of that body." On the defendant's motion for clarification, the trial judge explained that his order "was for the purpose of obtaining a trial *de novo* on the merits" and not on the issue of bias and prejudice. The trial judge did not explain the reasons for his action.

## II.

■ Since the trial judge has not certified his order for interlocutory review pursuant to Rule 53(c)(2)(i), the defendant is required to show "extraordinary circumstances whereby further proceedings pursuant to the said order would irreparably injure the complaining party or occasion a manifest waste of the resources of the court or of the parties." As we explain below, the trial judge exceeded his authority in ordering the remand. Moreover, if the government is correct that the *de novo* hearing the trial judge directed is improper, review at this time would be appropriate to avoid the unnecessary time, expense, and

effort that such a trial *de novo* would entail. We therefore shall grant the request for interlocutory review.

## III.

Section 1491 of Title 28 states:

> In any case within its jurisdiction, the court [of Claims] shall have the power to remand appropriate matters to any administrative or executive body or official with such directions as it may deem proper and just.

28 U.S.C. § 1491 (Supp. III 1979). Rule 149(a) parallels this statute. It states:

> At the request of a party or on its own motion, the court may in any case within its jurisdiction by order remand appropriate matters to any administrative or executive body or official, with such direction as may be deemed proper and just.

A remand to an agency for a trial *de novo* is an action that under both 28 U.S.C. § 1491 and Rule 149(a) only the court and not a trial judge may direct. We have not delegated to our trial judges the authority to enter such an order. It is not the kind of procedural order that our trial judges may issue under their general power under Rule 13(a) "to do and perform any acts which may be necessary or proper for the efficient performance of their duties and the regulation of proceedings before them." Although Rule 149(c) recognizes that a trial judge sometimes may order a remand—it states that a remand order "by the court (as distinguished from the trial judge) shall terminate the suspension (if any) of the reference to the trial judge"—that provision refers to routine orders and does not authorize a remand for a new trial.

Accordingly, in this case the trial judge should have referred the plaintiff's motion for a trial *de novo* to the court for disposition, accompanied by whatever recommendation he wished to make.

## IV.

A judge (or other official performing a quasi-judicial function) completes his work when he decides the case before him. Once he has rendered that decision, his role in the case is over, except if he is asked to reconsider his decision or a higher tribunal remands the case to him for further proceedings. He has no judicial interest in and should not be concerned about the defense of his decision if it is challenged on appeal or elsewhere. Under our adversary system that role is left to the party who has prevailed before the judge. Indeed, one of the criticisms of the use of the writ of mandamus to obtain interlocutory review is that it makes the judge whose decision is challenged a party in the mandamus proceedings who must defend his ruling. *Kerr v. United States District Court,* 426 U.S. 394, 402–03, 96 S.Ct. 2119, 2123–24, 48 L.Ed.2d 725 (1976).

Administrative Judge Grossbaum violated this rule. In his *ex parte* communications with the Justice Department lawyer handling the case, Judge Grossbaum went far beyond inquiring about the status of the case. Instead, he attempted to inject himself into and actively participate in the defense of his decision before this court. He explained to the lawyer that he wanted to discuss the case with her because "I don't want this case to be lost in the Court of Claims," emphasized that "he had more than an academic interest in the outcome of the litigation," and criticized the plaintiff's handling of the case as violating the rules of this court.

 A cardinal principle of judicial conduct is that a judge must avoid not only actual impropriety but also the appearance of impropriety. "[A]ny tribunal permitted by law to try cases and controversies not only must be unbiased but also must avoid even the appearance of bias." *Commonwealth Coatings Corp. v. Continental Casualty Co.,* 393 U.S. 145, 150, 89 S.Ct. 337, 340, 21 L.Ed.2d 301 (1968). *See also, Taylor v. Hayes,* 418 U.S. 488, 501, 94 S.Ct. 2697, 2704, 41 L.Ed.2d 897 (1974). The comment to Canon 2 of the American Bar Association's Code of Judicial Conduct warns that "[a] judge must avoid all impropriety and appearance of impropriety." Similarly,

Canon 2 of the Code of Judicial Conduct for United States Judges, which the Judicial Conference of the United States has approved, states that "[a] judge should avoid impropriety and the appearance of impropriety in all his activities." Although technically these standards may not cover administrative judges who are members of the Armed Services Board of Contract Appeals, the sensitive nature and public importance of the adjudicatory duties those individuals perform require that the same principles should govern their conduct. *Cf. Butz v. Economou*, 438 U.S. 478, 512–14, 98 S.Ct. 2894, 2913–15, 57 L.Ed.2d 895 (1978) (administrative judges have functions similar to those of article III judges and so are entitled to absolute immunity from damage suits).

The Standards of Conduct for employees of the Department of Defense instruct Departmental employees to "avoid any action . . . which might result in or reasonably be expected to create the appearance of . . . (d) [l]osing complete independence or impartiality . . . or (f) [a]ffecting adversely the confidence of the public in the integrity of the government." 32 C.F.R. § 40.-6 (1980).

■ Judge Grossbaum's actions in this case created at least an appearance of impropriety. His endeavors to influence and participate in the defense before this court of the decision he wrote for the Board overstepped the bounds of proper judicial conduct. Moreover, his statement that he "had more than an academic interest in the outcome of the litigation" went beyond a mere attempt to influence the handling of the case on appeal. The statement could have been viewed as suggesting the kind and degree of personal involvement in the case and hostility to the plaintiff that would warrant disqualification of a judge for bias and prejudice.

Indeed, we have already held that Judge Grossbaum's activities in this case created "the appearance of potential bias and prejudice." *Gulf & Western Industries, Inc. v. United States*, 226 Ct.Cl. ——, ——, 655 F.2d 1106, 1106 (1981). There we previously had

upheld another decision of the Board, which Judge Grossbaum also wrote, rejecting certain claims by the same contractor growing out of a different contract. *Gulf & Western Industries, Inc. v. United States*, 226 Ct.Cl. ——, 639 F.2d 732 (1980). After that decision, the Department of Justice informed the plaintiff's counsel of Judge Grossbaum's *ex parte* communications in the present case. The plaintiff then sought relief from our judgment in the prior case, based upon "the appearance of bias and prejudice on the part of" the Board. "[B]ecause of the co-pending status of the two actions, and the appearance of potential bias and prejudice," we vacated our prior judgment and remanded the case to our Trial Division "for a de novo determination and report by a trial judge, based upon a preponderance of the evidence in the existing administrative record." 226 Ct.Cl. at ——, 655 F.2d at 1106–07.

The present case is an even more compelling one for vacating the decision of the Board. In the first case we directed a trial *de novo* even though there was "no charge" or "evidence" "of any attempted *ex parte* communication" in that case. *Id.* at ——, 655 F.2d at 1106. If the Board's decision in the earlier case could not stand because Judge Grossbaum's activities in the present case created "the appearance of potential bias and prejudice," a *fortiori*, the Board's decision in the very case in which the improper activities took place must suffer the same fate.

The fact that these activities of Judge Grossbaum occurred after the Board decision had been rendered does not warrant a different result. The appearance of impropriety that these activities created tainted the Board proceedings and requires that the Board decision be vacated. Moreover, as indicated above, at least one of Judge Grossbaum's statements to the Justice Department lawyer suggested the possibility of actual bias and prejudice.

The government, however, argues that the remand to the Board should not be for a *de novo* determination but solely "to hold an evidentiary hearing by a different hear-

ing member on the question of alleged bias and prejudice by Judge Grossbaum." Since we have concluded that Judge Grossbaum's conduct created an appearance of impropriety which itself requires that the Board decision be vacated, it is immaterial whether Judge Grossbaum actually was biased or prejudiced. The short of it is that, without regard to Judge Grossbaum's actual bias or prejudice, the Board decision of which he was the author cannot stand.

## V.

The remaining question is what is the appropriate remedy in this case.

When we conclude that further administrative proceedings are required in a case coming to us from a Board of Contract Appeals, our normal practice is to remand the case to the Board. In the exceptional circumstances where the agency cannot provide adequate relief on such remand, we refer the case to our Trial Division. *Cf. United States v. Anthony Grace & Sons, Inc.*, 384 U.S. 424, 86 S.Ct. 1539, 16 L.Ed.2d 662 (1966); *United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963); *Baltimore Contractors, Inc. v. United States*, 226 Ct.Cl. ——, 643 F.2d 729 (1981); *Moore-McCormack Lines, Inc. v. United States*, 188 Ct.Cl. 644, 413 F.2d 568 (1969) (cases remanded to agency or decision ordered to be made on administrative record). Although the plaintiff originally sought a trial *de novo* before this court, apparently it now supports the trial judge's determination that further proceedings should be before the Board.

We agree. There is no reason to believe that a new Board composed of different individuals who have had no prior connection with the case would not fairly consider and decide the case. Here, unlike the situation in *Baltimore Contractors*, where we remanded the case to our Trial Division, the circumstances that require vacation of the Board decision are not the nature and character of the Board itself but the improper post-decisional activities of a member of a properly constituted and operating Board. This case also is unlike the prior *Gulf & Western* case, which we remanded to the Trial Division. In that case, the plaintiff tells us, it made no claim that Judge Grossbaum had excluded relevant evidence; here, however, the plaintiff makes that claim. *See infra.*

We do not think, however, that a trial *de novo* of this case necessarily is required. We believe that the new Board could decide the issue *de novo* based upon the existing administrative record, subject to the following qualifications:

1. The plaintiff contends that Judge Grossbaum improperly denied discovery and excluded relevant evidence. If the Board— or a member to whom it may assign the case for initial review—should agree with either of those contentions, then the record could be reopened to permit the plaintiff to introduce any additional evidence the hearing member deems admissible. If, in the judgment of the hearing member, the admission of such additional evidence warrants the introduction of still further evidence, he may permit it to be introduced.

2. If, upon study of the record, the Board or the hearing member concludes that there are questions of credibility that must be resolved, the record could be reopened to give the hearing member the opportunity to observe the demeanor of the witnesses whose credibility is in issue.

If, on the other hand, the Board should conclude that a trial *de novo* should be had, it may conduct one. Should it do so, however, it may not be necessary to try the entire case anew.

The record in this case is lengthy. The Supreme Court in *Carlo Bianchi*, 373 U.S. at 717, 83 S.Ct. at 1415, expressed concern, although in a different context, about "needless duplication of evidentiary hearings and . . . heavy additional burden in the time and expense required to bring litigation to an end." To avoid that situation, the parties might agree to accept as part of the record in the *de novo* trial portions of the existing record.

It is for the newly constituted Board, in the exercise of its discretion, to determine

whether to conduct a trial *de novo* or merely to decide the case *de novo* upon the existing or an augmented record.

### CONCLUSION

The request for interlocutory review is granted. The decision of the Armed Services Board of Contract Appeals in ASBCA No. 21090, dated January 23, 1980, is vacated. The case is remanded to the Board to decide it *de novo*, before a panel consisting of individuals who have had no prior connection with this case. The Board's new decision may be based upon the existing administrative record, which may be supplemented as specified in this opinion, or the Board may hold a trial *de novo*.

Further proceedings before this court are stayed for six months. Pursuant to Rule 149(f), plaintiff's counsel is designated to advise the court of the status of the proceedings before the Board. *See also* Rule 150.