**JO–BAR MANUFACTURING CORPORATION**

v.

**The UNITED STATES.**

No. 418–74.

United States Court of Claims.

May 12, 1976.

---

Asher W. Sweeney, Cincinnati, Ohio, attorney of record, for plaintiff.

Stephen G. Anderson, with whom was Asst. Atty. Gen. Rex E. Lee, Washington, D. C., for defendant; Sheldon J. Wolfe, Washington, D. C., of counsel.

Before SKELTON, KASHIWA and BENNETT, Judges.

## OPINION

PER CURIAM:

This case comes before the court on defendant's motion, filed March 8, 1976, requesting that the court adopt, as the basis for its judgment in this case, the recommended decision of Trial Judge Harry E. Wood, filed January 28, 1976, pursuant to Rule 166(c) on plaintiff's motion and defendant's cross-motion for summary judg-

ment, plaintiff having failed to file a request for review thereof by the court and the time for so filing pursuant to the Rules of the court having expired. Upon consideration thereof, without oral argument, since the court agrees with the decision, as hereinafter set forth, it hereby grants defendant's motion and affirms and adopts the decision as the basis for its judgment in this case. It is therefore concluded that the decision of the Armed Services Board of Contract Appeals denying plaintiff's claim for an equitable adjustment in contract price pursuant to the Changes clause, as not properly asserted prior to final payment, was neither arbitrary, capricious, unsupported by substantial evidence, nor legally erroneous and, accordingly, plaintiff's petition seeking reversal of that decision is hereby dismissed.

## OPINION OF TRIAL JUDGE

WOOD, *Trial Judge*: In this contract action, plaintiff seeks review, under Wunderlich Act standards,[1] of a decision of the Armed Services Board of Contract Appeals [2] denying plaintiff's claim for an equitable adjustment in contract price on the ground that plaintiff's claim thereto was not asserted prior to final contract payment, and was therefore barred by the time limitations contained within the contract's Changes clause.[3]

Plaintiff here contends that in consequence of an admittedly incomplete technical data package furnished to it prior to bidding, it performed work, and incurred costs, neither contemplated in bidding on, nor included in its bid price for, the contract work; that it gave proper and timely notice to defendant of its claim to an equitable adjustment in contract price; and that the administrative decision denying the claim as untimely is not entitled to finality. Defendant, of course, urges that the administrative decision should be upheld.

1. 68 Stat. 81, 41 U.S.C. §§ 321–22 (1970).

2. ASBCA No. 18766, 74–1 BCA ¶ 10,585. The administrative hearing was limited to issues of entitlement only.

3. The text of the contract's standard Changes clause appears at 32 C.F.R. § 7.103–2 (1965 Rev.).

The relevant facts found by the Board, or otherwise established by the administrative record, are briefly stated below. For reasons hereinafter appearing, it is concluded that plaintiff is not entitled to recover.

On December 30, 1970, defendant, acting through the Defense Supply Agency, Defense Construction Supply Center, Columbus, Ohio, issued an invitation for bids covering some 462 engine lubrication pump assemblies to be manufactured in accordance with certain specified, government-furnished drawings. Plaintiff responded to the IFB January 27, 1971, and, on April 8, 1971, was awarded a contract to furnish the said pump assemblies at a unit and total contract price of $66.13 and $30,552.06, respectively.

In October 1971, when plaintiff was ready to assemble the various components making up the pump assembly, it discovered that assembly drawings were missing from the technical data package. It is here conceded that defendant failed to furnish to plaintiff a complete technical data package, and that plaintiff was not chargeable with knowledge of the missing drawings prior to bidding on the contract in suit.

On October 1, 1971, Mr. Matheny, a government industrial specialist, had been assigned to plaintiff's plant for "surveillance and [technical] assistance purposes." On discovery of the missing drawings, plaintiff discussed them with Mr. Matheny and with Mr. Fruth, a government engineer at the Defense Construction Supply Center in Columbus, and defendant forwarded the missing drawings to plaintiff December 30, 1971.

The administrative record contains vague, ambiguous and to a degree conflicting evidence concerning what plaintiff did (or did not) do, prior to final contract payment, about the costs allegedly incurred in complying with the assembly drawings furnished to it December 30, 1971.

Plaintiff's chief executive officer, its sole witness, testified that on receipt of the missing drawings she told both Mr. Matheny and Mr. Fruth plaintiff "would be" claiming additional compensation in conse-

quence of those drawings. As the Board accurately observed, however, that same witness also testified that the government representatives to whom she had spoken about a price adjustment had "indicated to her that [plaintiff] should file a claim for whatever additional costs were involved."

Both Mr. Matheny and Mr. Fruth flatly contradicted plaintiff's testimony. Mr. Fruth denied any conversation with plaintiff concerning additional costs. Mr. Matheny testified he had no conversation with plaintiff's chief executive officer concerning additional costs at the time the missing drawings were furnished to plaintiff.

The Board found that plaintiff had failed to establish that it had asserted a claim to an equitable adjustment under the contract prior to final contract payment. In so finding, the Board gave careful consideration to what it termed the sole item of "credible evidence * * * which even remotely resembles the assertion of a claim": Mr. Matheny's recollection of a conversation with some representative of plaintiff, approximately a year after plaintiff's receipt of the missing drawings, during which the comment that plaintiff "would have to get more money" or was "going to ask for more money" was made.

The Board noted Mr. Matheny's limited authority, and that Mr. Matheny had explained to plaintiff's chief executive officer, shortly after October 1, 1971, that his contractual assignment was limited to technical assistance. The Board concluded that the general comment he recalled (and to which he had attached no particular significance) did not constitute a valid and proper claim under the Changes clause, but "at its best was an expression of an indefinite intent to seek a price adjustment as distinguished from a demand predicated upon an express contractual right."

In any event, following plaintiff's receipt of the missing drawings, it did complete the contract in due course. During contract performance there were several contract modifications, including one of June 6, 1972, by which plaintiff agreed to a minor reduc-

tion in unit and total contract prices, in exchange for a government extension of the contract delivery date. In February 1973, plaintiff submitted invoices to defendant, at a unit price of $66.13, covering the 462 engine lubrication pump assemblies. On March 16, 1973, defendant made a final contract payment of $30,348.78 to plaintiff.[4]

On April 20, 1973, plaintiff forwarded to the contracting officer a written claim for $38,734.08 for "additional time and costs necessary to incorporate drawings and dimensions not originally included with the basic bid package * * *."[5] The Board found no evidence that an intent to assert the claim was made in writing prior to April 20, 1973, and plaintiff does not, and cannot, challenge that finding.

On June 11, 1973, the contracting officer denied plaintiff's formal written claim on the ground that, not having been asserted until after final payment, it was untimely under the terms of the Changes clause. Plaintiff timely appealed the contracting officer's decision. As heretofore noted, the Board denied the appeal, stating that plaintiff had failed to establish "that it had manifested, prior to final contract payment, a positive intention to assert a claim as a matter of legal right either to the contracting officer or one empowered to act for him in such matters", and that there was "no valid basis for removing the [plaintiff's] claim from the time bar imposed by the Changes article."

At the outset, it should perhaps be noted that plaintiff not only did not question administratively the availability of relief under the Changes clause for defendant's defective technical data package, but affirmatively sought such relief from the contracting officer and later, the Board. Here too, relief is sought exclusively under the terms of the contract. For purposes of this decision, the validity of that position need not be explored. *Cf. Turnbull, Inc. v. United*

States, 389 F.2d 1007, 1012, 180 Ct.Cl. 1010, 1020–21 (1967).

In attacking the administrative decision, plaintiff asserts that defendant should have issued a written change order incorporating the missing drawings into the contract, so that plaintiff would have had an "established time period" within which to submit to the contracting officer its claim for an equitable adjustment. While the precise point plaintiff thereby endeavors to make is less than clear, this line of argument is in any event unsupported by logic, reason, or authority.

The Board expressed the view that a "simple change order should have been issued adding the missing drawings to the contract." That not having been done, however, the Board determined that defendant's forwarding of the drawings to plaintiff on December 30, 1971, amounted to a constructive change, and that it was plaintiff's responsibility timely (*i. e.,* before final payment, under the circumstances here present) to seek an equitable adjustment therefor, if warranted. In the present posture of the case, those determinations have not been shown to be legally erroneous or otherwise flawed. *Eggers & Higgins v. United States,* 403 F.2d 225, 236, 185 Ct.Cl. 765, 785–86 (1968); *Turnbull, Inc. v. United States, supra.*

Plaintiff was an experienced government contractor. Its chief executive officer had been involved in government contracting for some 15 years. Had defendant issued a formal change order, plaintiff would have had a relatively short period within which to claim a right to an equitable adjustment under the Changes article. It in fact had some 14 months after receipt of the missing drawings within which to do so. *See Eggers & Higgins v. United States, supra.* That (as will be seen) it made no valid claim under the Changes clause until after March 16, 1973, is difficult to understand. In the circumstances of this case, however, any

---

4. The final payment was made at a unit price of $65.69. The reduced unit and total contract prices were in conformity with the June 6, 1972, contract modification referred to above.

5. The claim, as made, amounted to more than the original total contract price.

prejudice to plaintiff from the manner in which the change was effected resulted from its own inactions in a situation calling for action, if warranted, and not from any fault on the part of defendant.

Plaintiff's principal contention is that it gave "proper notice to the Contracting Officer or Government pursuant to the provisions of the contract in issue" of its right to an equitable adjustment for performing the contract work in conformity with the assembly drawings furnished to it December 30, 1971. In substance, if not in *haec verba*, plaintiff characterizes the administrative decision to the contrary as arbitrary, capricious, and unsupported by substantial evidence. That argument must be, and is, rejected.

While there is some conflict in the administrative record as to what plaintiff's representatives told defendant's representatives, the Board carefully considered the entire record and found therefrom that plaintiff had failed to prove "it had manifested, prior to final contract payment, a positive intention to assert a claim as a matter of legal right either to the contracting officer or one empowered to act for him in such matters."

The words just quoted reflect both factual findings and legal determinations. The factual underpinnings of the administrative decision are, on this record, plainly entitled to finality. *Pelliccia v. United States,* 525 F.2d 1035, 1045, 208 Ct.Cl. ——, —— (1975); *Hoel-Steffen Constr. Co. v. United States,* 456 F.2d 760, 765, 197 Ct.Cl. 561, 568–69 (1972). Plaintiff has failed to show that the Board's findings are in any way arbitrary, capricious, or unsupported by substantial evidence. *Id.* Nor has plaintiff established that the Board decision was in any way legally erroneous. Thus, the administrative legal conclusions, while not binding, also deserve to be sustained.

The contract's Changes clause "contains a time limitation within which a contractor must assert his claims—30 days for actual changes, a reasonable period of time for constructive changes, and in any event no later than the date of 'final payment.' "

*Historical Services, Inc.,* DOT CAB Nos. 72–8, 72–8A, 72–2 BCA ¶ 9592 (and authorities there cited). In the constructive change situation, notice of the claim need not be presented "within the specific number of days allowed" by the Changes clause, but "the filing of a claim within the period of administration of the contract" is plainly a requisite. *Eggers & Higgins v. United States, supra,* 403 F.2d at 236, 185 Ct.Cl. at 785; see also *Specialty Assembling & Packing Co. v. United States,* 355 F.2d 554, 570, 174 Ct.Cl. 153, 179–80 (1966).

Where the contracting officer knows, or is properly chargeable with knowledge, that at the time of final payment the contractor is asserting a right to additional compensation, even though formal claim therefor has not been filed, the fact of final payment does not bar consideration of a later formal claim. Nor are any special words or formal means of communications required in presenting a claim for additional compensation. Those doctrines do not help plaintiff, however, since it is clear that, prior to final payment, the contractor must "manifest his present intention to seek recovery under a claim of right. If he does not do so, his claim is lost * * * [citations omitted]." McBride & Wachtel, 4 Government Contracts § 28.200 (1975 ed.).

As this court said in *Specialty Assembling & Packing Co. v. United States,* 298 F.2d 794, 796, 156 Ct.Cl. 252, 254–55 (1962):

> * * * Perhaps a claim registered pursuant to a Changes clause of a government contract need not specify that clause particularly as a basis for relief, but it must bear some of the attributes of a claim itself, purporting to be in the nature of a claim as of legal right as opposed to a request for grace.

An at best ambiguous and casual statement, to one authorized to provide plaintiff only technical assistance, does not amount to a proper assertion of a claim to an equitable adjustment in the contractually prescribed manner, and an administrative decision so holding cannot fairly be termed "in any way erroneous, let alone arbitrary, capri-

cious, or unsupported by the evidence." *Ibid.*

Upon consideration of the facts found by the Board, and entitled to finality here, and the applicable rules of law, the administrative holding that plaintiff's claim for an equitable adjustment pursuant to the Changes clause was not properly asserted prior to final payment was neither arbitrary, capricious, unsupported by substantial evidence, nor legally erroneous. Accordingly, plaintiff's petition seeking reversal of that decision should be dismissed.