### MINGUS CONSTRUCTORS, INC.

v.

### The UNITED STATES.

#### No. 315–84C.

United States Claims Court.

June 10, 1986.

Robert A. Scheffing, Phoenix, Ariz., for plaintiff. Jennings, Kepner and Haug, of counsel.

Michael T. Paul, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, for defendant. Daniel Jackson, Dept. of the Interior, of counsel.

## OPINION

MEROW, Judge:

This matter comes before the court on defendant's motion for summary judgment and on plaintiff's motion for partial summary judgment on an action filed by plaintiff for damages arising from performance of a road construction contract entered into by the parties.

Upon consideration of the parties' briefs and supporting materials submitted for the record, it is concluded that, for the reasons stated herein, summary judgment is granted in favor of defendant and denied as to plaintiff's motion for partial summary judgment.

### Facts

Plaintiff, Mingus Constructors, Inc. (Mingus), and defendant, the United States, through the Bureau of Indian Affairs, Department of the Interior, entered into a contract on July 31, 1981 for the construction of 8.93 miles of roadway located on the Hopi Indian Reservation in Navajo County, Arizona. The contract price was $1,750,-634.66. Notice to proceed was issued on or about August 12, 1981. The contract provided that performance was to be completed within 180 calendar days after the issuance of the notice to proceed. The government determined that final acceptance was established on August 3, 1982 and that the contract work was substantially completed on July 30, 1982. Plaintiff's performance fell within the extended contract completion date.

Plaintiff sent a letter dated July 14, 1982 to Mr. Mitchell Parks, who was at that time defendant's contracting officer (CO) for the project. The letter informed Mr. Parks that Mingus had a grievance relating to its working relationship with defendant's acting contracting officer's representative (COR). Mingus informed the CO that the conduct of the COR was so unreasonable, arbitrary and inconsistent that Mingus' project superintendent terminated his employment with the firm. In addition, the letter further stated: "We wish to advise

you of our intent to file a claim for additional cost incurred due to the aforementioned circumstances." Mingus did not specify any particular instances of misconduct or connect any specific substantive claims to the project superintendent's conduct.

Defendant next received a letter from plaintiff dated August 10, 1982, which referenced the July 12 letter advising defendant of plaintiff's intent to file a claim against the government as a result of the COR's conduct. The letter informed defendant that in addition to claims arising out of the COR's conduct, plaintiff had suffered losses and delays "as a result of other items of work which were either misrepresented by the contract documents or constructed outside the scope of the original design." The letter further stated:

We are currently in the process of assessing these damages in terms of our direct costs and in terms of the overall negative impact resulting from these changed conditions. We should have a finalized cost breakdown ready to submit to you within the next two weeks.

Again, no further specific details were provided relative to the COR's conduct, nor did plaintiff specify the source(s) of any alleged losses or delays. This letter was followed by a letter dated September 7, 1982 from a consulting firm that apparently had been retained by Mingus. The letter requested guidance on procedures for filing a claim.

On October 29, 1982, the parties executed a "Release of Claims," the text of which stated, in pertinent part:

NOW, THEREFORE, in consideration of the above premises and the payment by the United States to the contractor of the amount now due under the contract, to wit, the sum of Sixty nine thousand, three hundred thirty-four dollars and twenty-seven cents ($69,334.27), the contractor hereby remises, releases, and forever discharges the United States, its officers, agents, and employees, of and from all manner of debts, dues, liabilities, obligations, accounts, claims, and

demands whatsoever, in law and equity, under or by virtue of the said contract except:

Pursuant to correspondence we do intend to file a claim(s)—the amount(s) of which is undetermined at this time.

Defendant authorized final payment on November 2, 1982.

On January 7, 1983 and on February 18, 1983, plaintiff made requests for documents relating to the project under the Freedom of Information Act, 5 U.S.C. § 552. Approximately six months later, Mr. Linus Brown, who was then contracting officer, received a letter from plaintiff dated June 22, 1983, in which plaintiff had requested an extension of time to submit a contract claim. The contracting officer responded by letter dated July 14, 1983 which stated in part:

By letter dated July 14, 1982 you gave your notice of intent to make claim under Contract No. H50C14202388.

On November 2, 1982 your payment in the amount of $69,334.27 was released from this office. No disputes on quantities noted.

By Release of Claims executed October 29, 1982 you make an exception as follows:

Pursuant to correspondence we do intend to file a claim(s)—the amount(s) of which is undetermined at this time.

To date, one year has elapsed since your notice of intent to make a claim and nothing in the way of a written cost claim and detailed data in support thereof has been submitted to the Contracting Officer whereby he could render a decision.

Time frames for submitting cost claims by the contracting officer which are set forth in the contract under each pertinent clause, governs.

In view of the time elapsed and the lack of organic documents supporting your intended claim, the Contracting Officer hereby determines that no claim exists under this contract.

Nevertheless, plaintiff submitted a certified claim to defendant on January 5, 1984.

The claim was returned by the contracting officer to Mingus, "without action." The reasons set forth in the contracting officer's response were as follows:

1. It [the claim] was untimely received.

2. The contract requires that claims be made before final payment.

3. Your letter dated July 14, 1982 only gave your notice of intent to make a claim, it did not ask for quantified adjustment in the contract price nor did it request a decision, therefore it does not qualify as a claim as defined in the "Disputes" clause. A claim means:

(a) a written request submitted to the Contracting Officer;

(b) for payment of money, adjustment of contract terms, or other relief;

(c) which is in dispute or remains unresolved after a reasonable time for its review and disposition by the Government; and

(d) for which a Contracting Officer's final decision is demanded.

The Government was not aware of any pending claims under subject contract prior to final payment. Accordingly, when you failed to submit a claim for an equitable adjustment after one year of your notice of intent to make a claim, the Contracting Officer by certified letter dated July 14, 1983 made a unilateral determination that no claim exists under the contract. Such unilateral determination may not be appealed under the Disputes clause of the contract.[1]

Plaintiff filed its complaint in this court on June 19, 1984, which consisted of seven claims for relief. Essentially, plaintiff's claims consisted of change and alternative constructive change claims, defective specifications claims, differing site condition claims and derivative delay claims.

Defendant's answer contained two affirmative defenses. First, defendant asserts that plaintiff's claims are barred by the doctrine of accord and satisfaction, and, secondly, defendant asserts that plaintiff's claims are barred by final payment.

Defendant subsequently filed a motion for summary judgment and plaintiff filed a motion for partial summary judgment. Opposition and reply briefs were filed by the parties.

### Discussion

Defendant's motion for summary judgment presents three issues. The first is whether timely notice was given by plaintiff for claims under the governing contract clauses. The second issue is whether plaintiff's claims are barred by final payment. Lastly, at issue is whether plaintiff's claims are barred by the release executed by the parties on October 29, 1982.

Plaintiff's motion for partial summary judgment presents similarly framed issues of whether plaintiff's claims were timely filed; whether timely notice of filing of claim was given by plaintiff; whether plaintiff's claims are barred by accord and satisfaction; and whether the October 29, 1982 release executed by the parties precludes plaintiff from maintaining the instant lawsuit. Since the issues raised by plaintiff are encompassed by the issues raised by defendant, the court shall consider the issues raised by both parties simultaneously.

### Notice and Final Payment

Plaintiff has asserted claims governed by several contract clauses which include the standard "Changes" clause, the "Suspension of Work" clause, and the "Differing Site Conditions" clause. Each of these clauses contains notice provisions and limitation periods under which a claim brought under the clause must be met.

Under the "Changes" clause, general provision No. 3, for any change which causes an increase or decrease in the contractor's cost of or time for performance,

---

**1.** Plaintiff's certified claim was not the subject of a final decision by the contracting officer, as is required by 41 U.S.C. § 605(a). No jurisdictional impediment exists, however, since failure to issue a decision in the case at bar shall be deemed to be a decision by the contracting officer denying plaintiff's claims, authorizing suit in this court. 41 U.S.C. § 605(c)(4).

an equitable adjustment shall be made, provided that the contractor gives written notice of the date, circumstances, and source of the order and that the contractor regards the order as a change order. Although no starting point need be specified, notice must be given within 20 days from incurring costs as a result of a change order. Costs incurred more than 20 days prior to this notification cannot be recovered, except in the case of defective specifications. Under the same clause, any claim for equitable adjustment must be provided by the contractor within 30 days from receipt of any written change order or written notice of a constructive change. The contractor must set forth, in writing, the general nature and monetary extent of the claim. The government has discretion to receive any claim asserted under this clause prior to final payment. The consequences of a contractor's failure to follow the notice provisions of the clause can result in its claim being disallowed. In any event, a claim must be submitted no later than the date of final payment. *See Jo-Bar Mfg. Corp. v. United States*, 210 Ct.Cl. 149, 156–57, 535 F.2d 62, 66 (1976) (filing of a claim within the administration period of a contract is plainly a prerequisite), *citing, Eggers & Higgins v. United States*, 185 Ct.Cl. 765, 785, 403 F.2d 225, 236 (1968); *Specialty Assembling & Packing Co. v. United States*, 174 Ct.Cl. 153, 179–80, 355 F.2d 554, 570 (1966).

The "Suspension of Work" clause, general provision No. 17, provides, *inter alia*, that no adjustment for delay shall be made under the clause if an equitable adjustment is excluded under any other contract provision. Additionally, no claim under the clause for any costs incurred more than 20 days before notification shall be considered unless presented by the contractor, in writing, and unless the claim is asserted as soon as practicable after the delay. In any event, pursuant to the clause, the contractor may not assert a claim subsequent to final payment under the contract.

The "Differing Site Conditions" clause, general provision No. 4, as amended by FPR amendment 1731, included in the contract, provides that a contractor must notify the government, in writing, promptly and before conditions are disturbed, of the existence of unknown or materially different site conditions which will affect the contractor's costs. The government has discretion to receive any claim asserted prior to final payment. However, under the clause, no claim shall be considered after final payment.

Pursuant to each of the aforementioned clauses, the government has discretion to receive and consider, prior to final payment, any claim that was not filed within appropriate time limits. However, in the absence of special circumstances not present in the case at bar, final payment to the contractor by the government bars consideration of any subsequent claims for damages under the contract. *See Gulf & Western Industries, Inc. v. United States*, 6 Cl.Ct. 742 (1984); *G. M. Shupe, Inc. v. United States*, 230 Ct.Cl. 947 (1982); *Jo-Bar Mfg. Corp. v. United States*, 210 Ct.Cl. 149, 535 F.2d 62 (1976).

In the instant case, final payment under the contract was authorized by the government on November 2, 1982. None of the claims asserted in plaintiff's complaint were submitted to the contracting officer prior to final payment.

■ Plaintiff urges the court to consider an exception to the final payment bar which, it argues, is an exception to the rule pertinent to the instant case.[2] The Court of Claims stated in *Jo-Bar Mfg. Corp. v. United States, supra*, 210 Ct.Cl. at 157, 535 F.2d at 66, that:

> Where the contracting officer knows, or is properly chargeable with knowledge, that at the time of final payment the contractor is asserting a right to additional compensation, even though formal claim therefor has not been filed,

---

2. This case does not fall within any other special and limited situation in which a claim may be entertained despite the execution of a release. *See, e.g., J.G. Watts Construction Co. v. United States*, 161 Ct.Cl. 801, 806–07 (1963).

the fact of final payment does not bar consideration of a later formal claim. * *

Plaintiff's position is that the record supports a showing that the contracting officer had actual knowledge at the time of final payment that Mingus was asserting a right to additional compensation based on, *inter alia*, the exception taken to the general release. While the record supports a showing that the contracting officer had actual knowledge that Mingus, at the very least, had contemplated asserting a right to additional compensation, the "knowledge" did not extend to specific claims and was not such as to override considerations supporting the final payment rule grounded in prejudice to the government from untimely assertion of contractor claims. Defendant has established that the government would be prejudiced to a degree warranting the barring of plaintiff's claims for untimeliness. *See Gulf & Western Industries v. United States, supra,* 6 Cl.Ct. 742; *Eggers & Higgins v. United States, supra,* 185 Ct.Cl. 765, 403 F.2d 225.[3]

Plaintiff did not submit its certified claim to the contracting officer until January 5, 1984, approximately one year and two months after final payment. Defendant has submitted affidavits showing, aside from the mere passage of time between execution of the release and submission of plaintiff's certified claim, undue prejudice resulting from plaintiff's untimely assertion of its claims. Specifically, with respect to plaintiff's differing site conditions claim, since notice transmitted by way of plaintiff's claim was provided to the government after the road work had been completed, actual existing conditions cannot be verified; the government was deprived of the opportunity to consider alternate solutions, if necessary; and to maintain records pertaining to the cost of any additional work. By the time notice was received, the physical aspects of the area in question were completely altered. Under these conditions, the late notice is highly prejudicial to the government's proper analysis and presentation of its case.

With respect to plaintiff's changes and alternative constructive changes claims, affidavits submitted by the government show that if timely notice had been provided by plaintiff, the government would have discussed the matter with plaintiff and would have performed examinations and job site investigations. In addition, the government asserts that investigative results would have been documented. The validity of the contractor's claim cannot now be determined with the degree of accuracy or certainty which prompt notice would engender since original site conditions have been altered by construction. For example, with respect to the technical aspects of several of plaintiff's claims, staking has long since been removed, source pits cannot be examined for materials, chips for cover aggregate cannot be examined or tested since they have been buried in the road and have been exposed to traffic and weather conditions for years. Such examinations would be necessary to evaluating and proving defendant's case.

The government is equally prejudiced with respect to plaintiff's delay claims because of their inherent derivative nature.

■ Viewing the record as a whole, it is concluded that the relief plaintiff seeks under the contract fails for lack of timely notice under relevant contract clauses, coupled with the lack of any specific notice prior to final payment, in light of prejudice shown by the government.[4]

---

3. In *Gulf & Western,* the court found that the contractor's dilatory notice of its claim *increases* the "burden of persuasion which rests upon [the contractor] to offset whatever prejudice that may have accrued towards the government." 6 Cl.Ct. at 756.

4. Having so concluded, it is not necessary to determine whether plaintiff's claims are barred by the "Release of Claims" executed by the parties on October 29, 1982. The issue is whether the language contained in the October 29, 1982 release is sufficient to except the specific claims subsequently submitted. Given the lack of requisite specificity, in all probability the specific claims were not adequately excepted. *See H.L.C. & Associates Constr. Co. v. United States,* 176 Ct.Cl. 285, 367 F.2d 586 (1966) (where the court concluded that the excepted claims, not

*Conclusion*

It is concluded that, for the foregoing reasons, no genuine issue of material fact exists and that defendant is entitled to summary judgment as a matter of law.

Accordingly, summary judgment is granted in favor of defendant and denied as to plaintiff's motion for partial summary judgment. It is ORDERED that final judgment be entered dismissing the complaint, with each party to bear its own costs.

having been described in substance or amount, were so broad as to encompass anything the contractor might later assert to be within its

meaning, rendering the release virtually meaningless).