**ALEMAN FOOD SERVICES, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 521–89C.**

United States Claims Court.

Jan. 30, 1992.

**202**

James F. Moriarty, Washington, D.C., for plaintiff.

Sharon Y. Eubanks, Asst. Director, with whom were David M. Cohen, Director, and Stuart M. Gerson, Asst. Atty. Gen., U.S. Dept. of Justice, Washington, D.C., for defendant. Col. Susan P. McNeill, U.S. Dept. of the Air Force, of counsel.

## OPINION

SMITH, Chief Judge.

This dispute concerns a matter of contract interpretation and comes before the court on cross motions for summary judgment. The question presented is whether the contractor, a provider of food service at a military base, is entitled to recover increased costs due to state-mandated increases in workers' compensation and unemployment insurance. The contractor paid the increases, as required by contract. The contractor argues that it is entitled to recover the increased costs under the contract. For the reasons set forth below, the court grants plaintiff's motion for summary judgment and denies defendant's motion for summary judgment.

## FACTS

On April 23, 1986, the Department of the Air Force awarded Contract No. F41800–86–D0068 to the United States Small Business Administration, as contractor, and to plaintiff, Aleman Food Services, Inc. (Aleman), as subcontractor. The contract was to provide full food service at Lackland Air Force Base in Texas.

The contract was a negotiated, non-competitive services and supplies contract, providing for annual renewal by the Air Force for a period of no more than three years from the inception of the contract. The contract was subject to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (FLSA), and the Services Contract Act, 41 U.S.C. § 351 *et seq.* (SCA), and qualified as a multi-year and option contract under those acts.

The contract, which was renewed each year, specifically required Aleman to maintain workers' compensation and unemployment insurance for its employees. Workers' compensation insurance is not required by either federal or Texas law. Unemployment insurance is required by both jurisdictions. In addition, as a successor contractor, the plaintiff was required under the SCA to provide at least the same minimum wages and fringe benefits as the predecessor contractor. The predecessor contractor paid workers' compensation and unemployment insurance for the benefit of its employees.

When Aleman prepared its final offer of approximately $9,000,000 for the contract, it did not include in its price the contingency that workers' compensation and unemployment insurance rates would increase. Aleman believed that under the terms of the solicitation it was prohibited from doing so and believed that the contract allowed for an adjustment in the event that labor costs increased due to changes in those rates.

In early 1987, the state of Texas increased workers' compensation insurance premiums from 4.43% to 5.38% of the wage paid and increased the unemployment insurance tax rate from 0.20% to 1.15%. On May 1, 1987, the Air Force modified the contract to incorporate a new Department of Labor wage determination.[1] The modifi-

---

1. A wage determination, issued by the Department of Labor, specifies the minimum wage rates or fringe benefits a contractor in a specific

cation only increased the contract amount to include the portion of the increased workers' compensation and unemployment insurance which was attributable to the increase in wages; it did not include the increases required by the change in the state rates.

At oral argument, the situation was illustrated in the following way: If, in the base year, the wage rate is $10 per hour and the workers' compensation rate is 6%, the cost to Aleman is 6% of the $10, or 60 cents. Aleman is entitled to reimbursement from the government of that 60 cents. In subsequent years if, for example, the wage rate increases to $12 and at the same time the workers' compensation rate increases from 6% to 8%, the cost to Aleman would be the new rate (8%) on the total wage ($12), or 96 cents. The government argues that the new workers' compensation rate applies only to the *increase* in the wage ($2), which would amount to 16 cents. According to the government, Aleman would be entitled to reimbursement of 76 cents, which represents the 16 cents (from applying the new rate to the increase only) and the 60 cents (from applying the old rate to the base wage). Under the government's argument, Aleman would not be reimbursed for the remaining 20 cents of their cost.

In 1988, Texas again increased both workers' compensation and unemployment insurance rates, from 5.38% to 6.78%, and from 1.15% to 3.14%, respectively. The Air Force again refused to match the increases.

On February 4, 1988, as supplemented on July 18, 1988, Aleman submitted its claims for increased costs due to the statutory increases in the workers' compensation and unemployment insurance rates. On September 20, 1988, the contracting officer denied Aleman's claims. On September 22, 1989, Aleman filed its complaint with this court.[2] At the time the complaint was filed, Aleman claimed a right to reimbursement of $329,500.

## DISCUSSION

### Summary Judgment

Under Rule 56 of the Rules of the United States Claims Court, when a motion for summary judgment is filed, a judgment shall be rendered if the pleadings, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; rather, the court must evaluate each party's motion on its own merits. *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387 (Fed. Cir.1987).

Where a decision rests on the meaning of the words of a statute or regulation, disposition by summary judgment is appropriate. *Pacific Supply Cooperative v. Shell Oil Co.,* 697 F.2d 1084 (Temp.Emer.Ct.App. 1982). Likewise, contract interpretation is a matter of law amenable to a decision on summary judgment. *Government Systems Advisors, Inc. v. United States,* 847 F.2d 811 (Fed.Cir.1988). In this case, the conditions for summary judgment are met.

### Equitable Adjustment

Aleman argues that it is entitled to an equitable adjustment for the increase in workers' compensation and unemployment insurance rates because workers' compensation and unemployment insurance are fringe benefits and the contract provides

locality must pay each class of his employees. 29 C.F.R. § 4.1a(h) (1991).

2. The court notes that the complaint was filed more than one year after the decision of the contracting officer. The Contract Disputes Act, 41 U.S.C. § 609(a)(3) (1991), requires that actions commenced in this court:

shall be filed within twelve months from the date of *receipt by the contractor* of the deci-

sion of the contracting officer concerning the claim....

(emphasis added). *See also Shaver Partnership v. United States,* 11 Cl.Ct. 594, 595 (1987) (key date commencing 12–month period was receipt by contractor of final decision). Because the issue of untimeliness was not raised by defendant, the court assumes that the complaint was filed within twelve months of plaintiff's receipt of the contracting officer's decision.

that increases in the cost of fringe benefits will be paid by the defendant.

While the contract itself does not define "fringe benefits," plaintiff points to the SCA, which is specifically incorporated into the contract. The SCA requires that certain service contracts with the federal government, including the contract at issue here, include a provision specifying the fringe benefits to be furnished the various classes of service employees. Section 351 of the SCA provides, in relevant part, that contracts entered into by the United States shall include:

(a)(2) A provision specifying the fringe benefits to be furnished the various classes of service employees.... Such fringe benefits shall include ... compensation for injuries or illness resulting from occupational activity, or insurance to provide any of the foregoing, [and] unemployment benefits....

41 U.S.C. § 351(a)(2). Thus, argues Aleman, the SCA specifically contemplates that workers' compensation and unemployment insurance are fringe benefits.

In support of its argument that the government must bear the cost of the increase in workers' compensation and unemployment insurance rates, Aleman points to Clause 71 of the contract which states:

71. FAIR LABOR STANDARDS ACT AND SERVICE CONTRACT ACT—PRICE ADJUSTMENT (MULTI–YEAR AND OPTION CONTRACTS) (SEP 1979) (c) When, as a result of (i) the Department of Labor determination of minimum prevailing wages and fringe benefits applicable at the beginning of the renewal option period, or (ii) ..., or (iii) ..., the Contractor increases or decreases wages or fringe benefits of employees working on this contract to comply therewith, the contract price or contract unit price labor rates will be adjusted to reflect such increases or decreases. Any such adjustment will be limited to increases or decreases in wages or fringe benefits as described above, and the concomitant increases or decreases in social security and unemployment taxes and workmen's compensation insurance, but shall not

otherwise include any amount for general and administrative costs, overhead, or profits.

Contract between the government and Aleman, Clause 71. Aleman, pointing to subsection (a) of Clause 71, also argues that it was prevented from including an allowance in its contract bid to cover the possibility that the rates would increase. Subsection (a) of clause 71 provides that:

(a) The Contractor warrants that the prices set forth in this contract do not include any allowance for any contingency to cover increased costs for which adjustments [sic] is provided under this clause.

Defendant argues that workers' compensation and unemployment insurance are not fringe benefits under the SCA. Defendant relies upon the same section of the SCA as plaintiff; that section further provides that:

(a)(2) ... Such fringe benefits shall include ... other bona fide fringe benefits not otherwise required by federal, State, or local law to be provided by the contractor or subcontractor.

41 U.S.C. § 351(a)(2). Defendant contends that, because unemployment insurance is required by both federal and Texas law, it is not a fringe benefit. Similarly, defendant argues that, because workers' compensation is required by some states, it is not a fringe benefit.

To support their second argument, the government relies on a regulation, 29 C.F.R. § 4.171(c), which provides that:

No benefit required by any other federal law or by any state or local law, such as unemployment compensation, workers' compensation or social security is a fringe benefit.

In addition, in response to plaintiff's reliance on clause 71 of the contract, defendant relies on a portion of subsection (c) of clause 71 which states:

Any adjustment [of the contract price] will be limited to increases or decreases in wages or fringe benefits ... and the concomitant increases or decreases in social security and unemployment taxes and work[ers'] compensation insurance,

but shall not otherwise include any amount for general and administrative costs, overhead, or profits.

Defendant argues that it is only required to pay for increases in workers' compensation and unemployment insurance that accompany an increase in wages and that the Department of Labor wage determination included those adjustments at each renewal period.

### The Statutes

■ The purpose of the SCA is to provide the protection of the minimum wage and various fringe benefits for employees of federal contractors. The SCA attempts to ensure that such workers receive wages and benefits in accordance with prevailing standards in the locality. *See generally American Waste Removal Co. v. Donovan*, 748 F.2d 1406 (10th Cir.1984); *Berry v. Andrews*, 535 F.Supp. 1317 (M.D.Ala. 1982).

As always, the starting point for any interpretation of a statute is the statutory language itself. *Freese v. United States*, 6 Cl.Ct. 1 (1984), *aff'd*, 770 F.2d 177 (Fed.Cir. 1985). The SCA provides, with respect to workers' compensation and unemployment insurance:

> (a) Every contract ... shall contain: ... (2) a provision specifying the fringe benefits to be furnished ... employees. Such fringe benefits shall include ... compensation for injuries or illness resulting from occupational activity, or insurance to provide ... the foregoing, [and] unemployment benefits....

41 U.S.C. § 351(a)(2). Clearly, the SCA contemplates that workers' compensation and unemployment insurance are to be considered fringe benefits.

■ In matters of statutory construction, the duty of a court is to give effect to the intent of Congress. The plain meaning of the language of a statute is the place to start. *J.H. Miles & Co. v. United States*, 3 Cl.Ct. 10 (1983). Where the meaning of the statute is clear, based on the statutory

language, the court is not required to interpret that statute and must enforce the statute according it its own terms. *Fordyce v. United States*, 7 Cl.Ct. 591 (1985). Further, the court must give meaning to every word of a statute. *Hoffman Construction Co. v. United States*, 7 Cl.Ct. 518 (1985).

■ This court does not find a contradiction between the portions of the SCA quoted by the parties. Apparently, Congress wanted to enumerate specific fringe benefits, which may or may not be required by law, as well as to include other benefits not specifically required by law. The court would also note that, even if defendant were correct and the SCA was interpreted to include only fringe benefits which are not required by law, workers' compensation would still be a fringe benefit in a case such as the present one where workers' compensation is not required under Texas law.[3]

The court's finding is consistent with other cases which have interpreted the SCA. One of the few cases which addresses which fringe benefits are included under the SCA is *Trinity Services, Inc. v. Marshall*, 593 F.2d 1250 (D.C.Cir.1978). In that case, the court examined the items specifically listed under section 351(a)(2) to decide whether seniority rights fit into the catch-all phrase at the end of the list of fringe benefits. The court found that:

> All of the examples of fringe benefits in § 351(a)(2) require the employer who extends such a benefit to his own employees to incur a present cost or the risk of a future cost. That is, to provide the benefit, the employer must make a payment to the employee (or to a fund maintained in the employee's behalf) for the present or future use of the employee (or his beneficiary), allow the employee to accrue some form of deferred compensation (such as vacation time), or incur the risk of granting the benefit to the employee (or his beneficiary) at some future time (such as compensation for injuries or illness from occupational activity).

---

**3.** This seems to have been borne out by the facts of this case. At oral argument, counsel informed the court that defendant is now paying plaintiff for a portion of the amounts attributable to workers' compensation insurance.

*Id.* at 1257.[4] This court concludes that both workers' compensation insurance and unemployment insurance fit the test laid out in *Trinity*—costs are classified as fringe benefits where an employer incurs a present cost or risks a future cost—and thus are fringe benefits which must be included in a service contract with the government.

### The Regulation

█ As mentioned earlier, defendant relies upon 29 C.F.R. § 4.171(c) to support its argument. That regulation provides that:

> No benefit required by any other federal law or by any state or local law, such as unemployment compensation, workers' compensation or social security is a fringe benefit.

After reviewing the context of the regulation, it is the court's view that the regulation was never intended to apply to the instant situation. However, assuming the regulation had relevance to this case, it cannot control a statute. When a conflict exists between a statute and a regulation promulgated under that statute, the statute must control.[5]

### Rights Under The Contract

Having found that workers' compensation and unemployment insurance are fringe benefits, the court must now address the issue of who should bear the cost for the increases in rates. For this we must turn to the contract itself. Subsection (a) of Clause 71 provides that the contractor may not include in its bid the contingency that increases in costs, including an increase in the rate of fringe benefits, may occur. The contract provides that, in the event of an increase in costs, a contract adjustment shall be provided. Consequently, the court must conclude that the modification of the contract resulting from the Department of Labor wage determination should have included the entire increase in cost to the employer that resulted from the statutory increase, not just the increase resulting from the increased wage.[6] Any other interpretation would be unreasonable in light of the purpose of subsection (a) of clause 71. Furthermore, it would undermine the integrity of the bidding process if the contractor were able to include contingencies in the bid. *See Shank–Artukovich v. United States,* 13 Cl.Ct. 346 (1987), *aff'd,* 848 F.2d 1245 (Fed.Cir.1988) (allowing contractor to seek equitable adjustment in con-

**4.** The court added in a footnote that the statute also contemplates that many employers have insurance against such risks. The court viewed such insurance coverage, a present cost, as a fringe benefit within the meaning of the Act. 593 F.2d at 1257 n. 32.

**5.** While there may well have been an entirely different purpose for this regulation than the one at issue here, the court has been unable to definitively find such a purpose and neither counsel has elucidated the purpose. After reviewing the regulation and its context, it appears that the regulation's purpose was to distinguish between bona fide fringe benefits which would not affect the real rates of an employee's pay, and certain extra payments which could count toward employee wages for various purposes. Thus, the regulation has no real relevance to the issue in this case.

**6.** Because plaintiff prevails on this argument, it is not necessary to address plaintiff's arguments concerning custom and usage, mistake of fact, or estoppel.

The court notes that, at least as to the arguments regarding mistake of fact and custom and

usage, questions of fact were raised which would have precluded a decision on summary judgment. The court also notes that defendant raised the issue of timeliness of notice. Defendant argues that plaintiff's request for a contract adjustment was not timely in accordance with Clause 71(d) of the contract, which requires Aleman to notify the contracting officer of any increases claimed within 30 days after the effective date of the wage change. While the parties vehemently argued this point, the court notes that the Claims Court and the boards of contract appeals have consistently held that contractors will only be held to a strict application of notice requirements if the government can show that it was prejudiced by lack of notice. When prejudice is found, the result will be a higher burden of persuasion on the contractor rather than outright rejection of the claim. *Jo–Bar Manufacturing Corp. v. United States,* 535 F.2d 62, 210 Ct.Cl. 149 (1976); *Big Chief Drilling Co. v. United States,* 15 Cl.Ct. 295, 303 (1988) (and cases cited therein). Defendant has not alleged that it was prejudiced by the lack of notice and, indeed, the court finds that defendant was not prejudiced here, where knowledge of a claim is evident within approximately 60 days of the first effective date of a wage change.

tract price instead of including all possible contingencies in contract terms, is " 'to prevent bidders from increasing their bid prices to protect against misfortunes resulting from unforeseen developments ... and thus avoiding turning a construction contract into a "gambling transaction" ' ") (quoting *J.F. Shea Co. v. United States,* 4 Cl.Ct. 46, 50 (1983), *aff'd,* 754 F.2d 338 (Fed.Cir.1985)).

### Jurisdiction

■ After oral argument, defendant filed a supplemental brief alleging that this court lacks jurisdiction to entertain plaintiff's claim. Defendant's position rests on two decisions, *Emerald Maintenance, Inc. v. United States,* 925 F.2d 1425 (Fed.Cir. 1991) and *Burnside–Ott Aviation Training Center, Inc. v. United States,* 24 Cl.Ct. 553 (1991). Defendant contends that plaintiff's argument is premised on Clause 71 of the contract, which is part of the labor standards provision of the contract. Clause 67 of the contract contains a subsection (u), which is entitled 'Disputes Concerning Labor Standards.' This subsection provides that:

> Disputes arising out of the labor standards provisions of this contract shall not be subject to the general disputes clause of this contract. Such disputes shall be resolved in accordance with the procedures of the Department of Labor set forth in 29 CFR Parts 4, 6, and 8. Disputes within the meaning of this clause include disputes between the contractor (or any of its subcontractors) and the contracting agency, the U.S. Department of Labor or the employees or their representatives.

In *Emerald,* argues defendant, the Federal Circuit held that questions arising under the labor standards provision of the contract are uniquely within the jurisdiction of the Department of Labor. Under this rule, defendant argues, the present case does not fall within the Claims Court's Contract Disputes Act jurisdiction and should be dismissed.

*Emerald* involved two contracts for the re-roofing of two housing areas. A wage determination was prepared by the Depart-

ment of Labor specifying categories of workers; the categories included laborers but not roofers. At the time these contracts were executed, an area practice governing the performance of contracts required that all employees who worked on roofs be classified as roofers. In order to comply with the Davis–Bacon Act provisions of a contract, workers must be classified according to the classifications used in the locality in which the contract is performed. Upon discovery of this, the contracting officer notified Emerald of the area practice of classifying and paying all employees who worked on roofs as roofers and requested that Emerald make restitution payments for underpaid employees and properly classify each employee for the remainder of the contracts. The requested corrective action was never taken. The contracting officer withheld money and paid this money directly to workers who had been incorrectly paid. Emerald submitted a claim to the contracting officer for payment of the withheld money; this claim was denied.

The *Emerald* decision addressed the 'Disputes Concerning Labor Standards' provision in the contract. That provision is substantially similar to the one contained in Aleman's contract—both clauses expressly relegate all disputes arising out of the contract's labor provisions to the Department of Labor's administrative process. The Armed Services Board of Contract Appeals determined that Emerald was, in effect, attacking the contents of the wage determination when they contested the adequacy of the job descriptions. The Board concluded that, since the wage determination was prepared by the Department of Labor and the Disputes Concerning Labor Standards provision of the contracts limited the resolution of labor disputes to the Department of Labor, the contracting agency was not responsible for the content of the wage determination. Therefore, the Board did not have jurisdiction over these counts. The Federal Circuit affirmed.

The Federal Circuit focused on the issue of whether the particular problem before

the court "aris[es] out of" the labor standards provisions. The Court stated:

> However Emerald chooses to style its complaint, ... the essence of its complaint related to the wage rate it had to pay all workers doing roofing work, and the listing of job categories and rates in the contracts is surely one of the labor standards provisions. The dispute here thus 'aris[es] out of' the labor standards provisions of the contracts, and the Disputes provisions require that it be resolved by Labor.

*Id.* 925 F.2d at 1429. Therefore, the court concluded, the Board did not have jurisdiction.

Defendant also relies on this court's recent decision in *Burnside–Ott,* which applies the Federal Circuit's decision in *Emerald.* The court in *Burnside–Ott* held that:

> this court has jurisdiction when 'a dispute centers on the parties' mutual contract rights and obligations, ... even though matters reserved to and decided exclusively by the Department of Labor are part of the factual predicate.'

*Burnside–Ott,* 24 Cl.Ct. at 557, quoting *Emerald,* 88–3 B.C.A. (CCH) ¶ 21,103, at 106,532, 1988 WL 97169. However, the court went on to state that:

> the court cannot agree that it has subject matter jurisdiction when issues within exclusive Department of Labor jurisdiction form the entire factual predicate.

*Id.*

Based on these two decisions, defendant argues that the court lacks jurisdiction in this case. Defendant contends that, because Aleman's claims arise out of the labor standards provisions of its contract, the claims are not subject to resolution in the Claims Court. Defendant maintains that the contract provides that the claims be resolved by the Department of Labor, and that Aleman is bound by the terms of that agreement.

To determine whether this court has subject matter jurisdiction, the court must,

therefore, examine Aleman's claim to determine whether it 'arises out of' the labor standards provisions, in which case this court would not have jurisdiction. In the present case, the court was required to determine whether workers' compensation and unemployment insurance were fringe benefits, and, if so, who should bear the cost of the increase in those rates. In doing so, the court had to examine the language of the applicable statute. Based on the plain language of the statute, the court concluded that the two items were fringe benefits. To answer the question of who should bear the cost of the increase, the terms of the contract were examined. Clause 71 of the contract requires that increases in fringe benefits are to be borne by the government where, by operation of law, the cost increases through no act or omission of the contractor.

This case is to be distinguished from *Emerald* and *Burnside–Ott.* In *Emerald,* the Department of Labor's wage determination categorizing laborers was directly at issue. In effect, Emerald was attacking the contents of the wage determination. Similarly, in *Burnside–Ott,* the plaintiff was attempting to recover increased wages it had been required to pay pursuant to a Department of Labor ruling. The court classified the Department's ruling as "an adjudication under the labor standards provisions of the contract." *Burnside–Ott,* 24 Cl.Ct. at 561. The court concluded that in both *Burnside–Ott* and *Emerald,* "the matters reserved to and decided exclusively by Department of Labor were not merely a part of the factual predicate, but rather formed the entire basis for [the] complaint." *Id.* As discussed above, in this case the matters reserved to the Department of Labor are merely "part of the factual predicate," and do not "form[ ] the entire basis for [the] complaint." *Id.*[7]

In this case, the dispute did not 'arise out of' the labor standards provisions or any determination by the Department of Labor. Both parties agree on the Department's

---

7. Because plaintiff is correct in this argument, it is not necessary to address plaintiff's arguments

concerning waiver or retroactive application.

wage determination. Their disagreement concerns the contractual allocation of the risk of an increase in the cost of certain fringe benefits. This is not a matter within the particular expertise of the Department of Labor. This court, therefore, has subject matter jurisdiction over this contract dispute.

## CONCLUSION

■ This case concerns a contract dispute and jurisdiction is properly in this court. The workers' compensation and unemployment insurance are properly classified as fringe benefits. Because of this, the modification of the contract in response to the wage determination should have included the entire increase in Aleman's cost. Plaintiff is entitled to an equitable adjustment to include the increased costs it incurred because of the increase in the workers' compensation and unemployment insurance rates.

Plaintiff's motion for summary judgment is GRANTED. Defendant's motion for summary judgment is DENIED. However, the court is, at this time, unable to determine the amount of judgment. When the complaint was filed, plaintiff was still fulfilling the contract and the entire amount of the award to which plaintiff is entitled had not been determined. In addition, some portion of the workers' compensation insurance rate change already has been paid by defendant. The parties shall file a joint status report within 60 days of this opinion proposing the amount of judgment. If the parties are unable to agree, separate reports may be filed.

IT IS SO ORDERED.

