Judge Newman's comments on the changes are attached hereto.

Upon consideration of the suggestions for rehearing in banc thereafter by the circuit judges who are in regular active service, the suggestions are ACCEPTED.

It is FURTHER ORDERED that the judgment of the court entered on May 25, 1993, is vacated and that the opinion of the court, as amended, accompanying the said judgment is withdrawn.

The parties will be advised in due course if additional briefing is needed and of the date of hearing in banc.

NEWMAN, *Circuit Judge*, commenting on the Order amending the text of the majority opinion.

The reasons for the panel majority's changes are not stated. Thus I write separately to point out that:

(1) These cases do not turn on whether the written arrangements between these banks and the government are designated as "understandings" instead of "agreements". Such semantics do not control the fundamental issues raised.

(2) The now-deleted sentence that "The regulations merely conform to the statute" was indeed incorrect. However, the further statement that the regulations were not placed at issue is also incorrect, for this litigation unambiguously relates to the statute as implemented by the regulations.

**ALEMAN FOOD SERVICES, INC., Plaintiff–Appellee,**

v.

**The UNITED STATES, Defendant–Appellant.**

No. 92–5163.

United States Court of Appeals, Federal Circuit.

June 2, 1993.

James F. Moriarty, Schnader, Harrison, Segal & Lewis, Washington, DC, argued for plaintiff-appellee. With him on the brief were Richard C. Walters and Cherie B. Artz.

George M. Beasley, III, Sr. Trial Counsel, Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued for defendant-appellant. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen. and David M. Cohen, Director. Also on the brief was LTC Richard Pennington, Dept. of the Air Force, Arlington, VA, of counsel.

Before RICH, MAYER, and SCHALL, Circuit Judges.

MAYER, Circuit Judge.

The United States appeals the judgment of the United States Court of Federal Claims,[1] 25 Cl.Ct. 201 (1992), awarding compensation to Aleman Food Services, Inc. for additional costs incurred under its contract with the Department of the Air Force resulting from increased workers' compensation and unemployment insurance rates under Texas state law. We reverse.

### Background

Aleman Food Services, Inc. was awarded a noncompetitively negotiated, fixed-price service contract for food services at Lackland Air Force Base, Texas. The contract provided for a basic year of service from May 1, 1986 through April 30, 1987, and had four option years. Pursuant to Clause 67, the contract incorporated the Service Contract Act (SCA) of 1965, as amended. 41 U.S.C. § 351 et seq. The contract also included a price adjustment clause, Clause 71, which provided in relevant part:

> (c) When, as a result of (i) the Department of Labor determination of minimum prevailing wages and fringe benefits applicable at the beginning of the renewal option period, ... the Contractor increases or decreases wages or fringe benefits of employees working on this contract to comply therewith, the contract price or contract unit price labor rates will be adjusted to reflect such increases or decreases. Any such adjustment will be limited to increases or decreases in wages or fringe benefits as described above, and the concomitant increases or decreases in social

---

1. The United States Claims Court was renamed the Court of Federal Claims on October 29, 1992. Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 902(a), 106 Stat. 4506 (1992).

security and unemployment taxes and workmen's compensation insurance, but shall not otherwise include any amount for general and administrative costs, overhead, or profits.

The original contract incorporated Department of Labor (DOL) wage determination number 77–941 (Rev. 16), dated April 19, 1985. This wage determination specified minimum hourly wages to be paid certain classes of workers and included requirements that the contractor pay vacation and holiday benefits. The determination was silent about workers' compensation and unemployment benefits. Subsequent wage determinations were incorporated into the contract and also did not include workers' compensation and unemployment benefits provisions. Aleman was required by both state and federal law to provide unemployment insurance for its employees. A separate provision of the contract also required it to provide workers' compensation.[2]

Early in 1987, Texas increased workers' compensation insurance premiums and the unemployment insurance tax rate. On May 1, 1987, the government exercised its option to extend the contract for an additional year. It also modified the contract to incorporate DOL wage determination number 87–120, issued May 1, 1987. Pursuant to Clause 71(c), this modification included an increase in the contract price to compensate Aleman for increases in workers' compensation and unemployment insurance costs attributable to the higher wages mandated by the wage determination. The government compensated Aleman only for increased workers' compensation and unemployment insurance rates as applied to the increased amount of wages. It did not compensate for the increased rates applied to the wage base which Aleman was required to pay its employees under the previous wage determination.[3]

Aleman submitted a claim for increased costs due to the increase in workers' compensation and unemployment benefits rates as applied to its original wage base, supplemented to include increases under subsequent wage determinations in later option years. The contracting officer denied Aleman's claims and Aleman filed its complaint with the Claims Court. On summary judgment, the Claims Court held that Clause 71 required reimbursement for the entire increase in Aleman's costs due to state law increases in workers' compensation and unemployment insurance rates.

*Discussion*

■ First, a note about jurisdiction. Before the Claims Court, the government argued that the court did not have jurisdiction to resolve the dispute. This argument was founded on the contract's Disputes Concerning Labor Standards clause which provides that disputes "arising out of the labor standards provisions of this contract shall not be subject to the general disputes clause of this contract" but must be resolved according to DOL administrative procedures. In this case, there is no need to interpret any DOL regulation in reaching a decision, thus the general disputes clause does apply and there is jurisdiction. *See Burnside–Ott Aviation Training Center, Inc., v. United States,* 985 F.2d 1574, 1580 (Fed.Cir.1992) ("By asserting entitlement to an equitable adjustment under

2. Section H—Special Provisions provided:
 1. INSURANCE:
   In addition to any other insurance required by law, the contractor and subcontractors performing work on a Government installation shall procure and maintain, during the entire period of contract performance, the following minimum insurance:
   (1) Workmen's Compensation and Employers' Liability Insurance;
   (a) Statutory Workmen's Compensation including occupational disease coverage.

3. The Claims Court opinion included the following description of the situation which was offered at oral argument: "If, in the base year, the wage rate is $10 per hour and the workers' compensation rate is 6%, the cost to Aleman is 6% of the $10, or 60 cents. Aleman is entitled to reimbursement from the government of that 60 cents. In subsequent years if, for example, the wage rate increases to $12 and at the same time the workers' compensation rate increases from 6% to 8%, the cost to Aleman would be the new rate (8%) on the total wage ($12), or 96 cents. The government argues that the new workers' compensation rate applies only to the *increase* in the wage ($2), which would amount to 16 cents. According to the government, Aleman would be entitled to reimbursement of 76 cents, which represents the 16 cents (from applying the new rate to the increase only) and the 60 cents (from applying the old rate to the base wage). Under the government's argument, Aleman would not be reimbursed for the remaining 20 cents of their cost." 25 Cl.Ct. 201, 203 (1992).

the Price Adjustment Clause and the Changes Clause of the contract ... the contractor simply requests the Claims Court to determine the effect that the DOL's classification had on its contract rights."); *see also, Emerald Maintenance, Inc. v. United States,* 925 F.2d 1425, 1428 (Fed.Cir.1991) (the Armed Services Board of Contract Appeals had no jurisdiction where the dispute concerned the wage rate the contractor had to pay certain workers under a DOL determination).

■ The dispute, whether the government is obligated to compensate Aleman for increases in Texas state workers' compensation and unemployment insurance taxes, is a question of contract interpretation which we review de novo. *R.B. Wright Constr. Co. v. United States,* 919 F.2d 1569, 1571 (Fed.Cir. 1990). While the opinion of a lower court may be helpful to this court's evaluation of the legal issues presented by contract interpretation, we are not bound by it. *Blake Constr. Co. v. United States,* 987 F.2d 743, 746 (Fed.Cir.1993) (citing *J.B. Williams, Co. v. United States,* 450 F.2d 1379, 1388, 196 Ct.Cl. 491 (1971)). In this case we disagree with the Claims Court.

■ Wherever possible, courts should look to the plain language of the contract to resolve any questions of contract interpretation. *Gould, Inc. v. United States,* 935 F.2d 1271, 1274 (Fed.Cir.1991). Clause 71 unambiguously allocates the parties' responsibilities for increased costs. The government assumed the responsibility for increases or decreases in the wages and fringe benefits, and concomitant changes to social security and unemployment taxes and workers' compensation insurance, which are the *"result of* (i) the Department of Labor determination of minimum prevailing wages and fringe benefits applicable at the beginning of the renewal option period...."* (Emphasis added.) The issue before us, therefore, is whether the increased costs claimed by Aleman can be considered the "result of" a DOL determination.[4]

As a matter of common sense, the DOL determination may itself mandate an increase in the wages or fringe benefits the contractor must pay its employees. In addition, this court has recognized a second way in which an increase in wages or fringe benefits may be said to result from a DOL determination, even though the determination did not itself mandate the increase. In *United States v. Service Ventures, Inc.,* 899 F.2d 1 (Fed.Cir. 1990), a contractor sought recovery for additional costs incurred when some of its employees became eligible for vacation pay after the government exercised its option to extend the term of the contract for another year. The contract contained a price adjustment clause which is in relevant aspects identical to Clause 71. We held that the contractor was entitled to an adjustment for the increased costs where the DOL wage rate determination applicable to the option year contained a provision explicitly requiring the contractor to pay vacation benefits to certain eligible employees. Although the increases in the benefits paid by the contractor were attributable to the changed eligibility status of some employees, "[t]hese benefits were due entirely to the [wage rate determination] applicable at the beginning of the renewal option period and were required to be paid in accordance with" the price adjustment clause. *Id.* 899 F.2d at 3.

The determinative question is what is provided by the various DOL determinations which were incorporated into Aleman's contract. In this case, none of the DOL determinations applicable at the beginning of the option years in question say anything about workers' compensation or unemployment insurance. Aleman's increased workers' compensation and unemployment insurance taxes were solely the result of changes in Texas law. Consequently, Aleman cannot turn to Clause 71(c)(i) to recover its increased costs.

Aleman points to several contract provisions which it argues establish the contractor's obligation to provide workers' compensation and unemployment insurance. First, it reiterates the Claims Court's determination that workers' compensation and unem-

---

4. The rest of Clause 71(c) provides for adjustments in contract price for increases and decreases resulting from, (ii) an increased or decreased wage determination otherwise applied to the contract by operation of law, or (iii) certain amendments to the Fair Labor Standards Act.

These parts were not considered by the Claims Court in its decision and are not here asserted by respondent as bases for recovering increases in its workers' compensation and unemployment insurance costs.

ployment insurance are "fringe benefits" within the meaning of the SCA.[5] But even if these expenses are fringe benefits under the SCA, about which we offer no opinion, the dispositive fact remains that they are not fringe benefits mandated or increased by a DOL determination applicable at the beginning of the renewal option period, and they are not compensable under Clause 71(c)(i). Aleman's arguments concerning the SCA's predecessor contracts provisions fail for the same reason.[6]

Aleman also argues that DOL determination No. 87–120, dated May 1, 1987, did instruct it to provide workers' compensation and unemployment insurance. This argument is based on the language of a clause inserted at the end of the determination, which states:

> NOTE: In accordance with Section 4(c) of the Service Contract Act, as amended, the wage rates and fringe benefits set forth in this wage determination are based on a collective bargaining agreement(s) under which the incumbent contractor is operating. The wage determination sets forth the wage rates and fringe benefits provided by the collective bargaining agreement and applicable to performance of the service contract. However, failure to include any job classification, wage rate or fringe benefit encompassed in the collective bargaining agreement does not relieve the successor contractor of the statutory requirements to comply as a minimum with the terms of the collective bargaining agreement insofar as wages and fringe benefits are concerned.[7]

Aleman contends that this note's reference to fringe benefits encompassed in the collective bargaining agreement operates to incorporate all of those benefits into the DOL determination. Even if we were to agree on this point, Aleman has not provided any evidence that the collective bargaining agreement addressed workers' compensation or unemployment benefits.

Aleman makes much of the fact that pursuant to section (a) of Clause 71, it excluded from its bid any contingency for increases in Texas workers' compensation and unemployment benefits rates.[8] The Claims Court also found this fact compelling, reasoning that an interpretation of the contract which does not compensate Aleman for the increased costs would be unreasonable in light of the purpose of section (a)—reducing the uncertainty of the bidding process. While section (a) does alleviate the need for the contractor to inflate its bid in anticipation of certain future cost increases, these increases are expressly limited to those for which "this clause," including section (c), provides adjustments. The fact that Aleman erroneously excluded increases in workers' compensation and unemployment insurance mandated by state law from its bid under section (a) cannot provide a basis for interpreting the scope of section (c).

The increases in workers' compensation and unemployment insurance rates were the result of Texas law, and no DOL determination applicable at the beginning of a renewal option period mandated these benefits. Aleman is not entitled to compensation under Clause 71 for additional costs attributable only to the increases under Texas law.

### Conclusion

Accordingly, the judgment of the Court of Federal Claims is reversed.

*REVERSED.*

---

5. The Claims Court relied on section 2(a)(2) of the SCA, which provides: "every contract ... shall contain: ... (2) A provision specifying the fringe benefits to be furnished ... employees.... Such fringe benefits shall include ... compensation for injuries or illness resulting from occupational activity, or insurance to provide any of the foregoing, [and] unemployment benefits...." 41 U.S.C. § 351(a)(2).

6. Section 353(c) of the SCA requires a successor contractor to pay at least the wages and fringe benefits furnished by the predecessor contractor. Aleman argues that as a successor contractor, it

was thus bound to provide workers' compensation and unemployment insurance as provided by its predecessor.

7. The addition of this note was apparently prompted by the unionization of Aleman's workers in 1987.

8. Clause 71(a) provides:
The Contractor warrants that the prices set forth in this contract do not include any allowance for any contingency to cover increased costs for which adjustments is [sic] provided *under this clause.* (Emphasis added.)