Lloyd L. LITTLE, and Linda K. Little, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 95–589 C.

United States Court of Federal Claims.

March 19, 2001.

Babette Patton, Oklahoma City, Oklahoma, for the Plaintiffs.

Domenique Kirchner, Washington, D.C., with whom was Frank W. Hunger ˚Assistant Attorney General, United States Department of Justice, for the Defendant. Robert L. Huddle, U.S. Department of Agriculture, of counsel.

## OPINION

BUSH, Judge.

In this action the plaintiffs, Lloyd Little and Linda Little (the Littles), seek damages

in excess of $500,000 stemming from the Federal Farmers Home Administration's (FmHA)[1] alleged breach of two contracts to which the Littles are a third party. This matter is currently before this court on the government's motion for summary judgment. The motion for summary judgment is granted.

## BACKGROUND

The Littles ran a stocker cattle ranching operation in the state of Oklahoma. They took out the following loans: (1) a farm ownership loan in the amount of $96,000 dated January 28, 1985; (2) an operating loan line of credit in the amount of $400,000 dated April 14, 1986; and (3) a note and security agreement for $400,000 dated July 12, 1989. The $400,000 line of credit that was issued to plaintiffs on April 14, 1986 was closed on or about July 12, 1989 by a payoff of that loan. Ultimately the Bank of Commerce, Wetumka, Oklahoma (the Bank; Commerce Bank) became the holder of all plaintiffs' notes, mortgages, and security agreements. Pursuant to a statutory scheme wherein Congress gave the Secretary of Agriculture authority to guarantee loans made to farmers by private lending institutions, FmHA was the guarantor of plaintiffs' loans. *See* 7 U.S.C. § 1929(h). The Littles' loans were ninety percent guaranteed by FmHA. When FmHA granted the guarantees, it executed Contracts of Guarantee with the lender, Commerce Bank, creating a contractual relationship between FmHA (guarantor) and the lender (guarantee). *See* 7 C.F.R. § 1980.6(a). Germane to this case is the July 18, 1989 Contract of Guarantee. *See id.* The FmHA and Commerce Bank are also signatories to a Lender's Agreement (Line of Credit), dated April 10, 1989 (Lender's Agreement). *See* 7 C.F.R. § 1980.6(a). The Littles are not parties to either of these agreements. In his November 12, 1996 opinion, however, Judge Futey found the Littles to be third-party beneficiaries to the Contract of Guarantee and the Lender's Agree-

ment. *Lloyd L. Little, and Linda K. Little v. United States,* No. 95–589C, slip op. at 8.

The section of the Lender's Agreement relevant to the resolution of this case provides:

X. *Defaults.*

A. The Lender will notify FmHA when a borrower is thirty (30) days past due on a payment and is unlikely to bring its account current within sixty (60) days, or if the Borrower has not met its responsibilities of providing the required financial statements to the Lender or is otherwise in default. The Lender will notify FmHA of the status of a Borrower's default on Form FmHA 1980–44, "Guaranteed Loan Borrower Default Status." A meeting will be arranged by the Lender with the Borrower and FmHA to resolve the problem. Actions taken by the Lender with concurrence of FmHA may include but are not limited to any curative actions contained in either Subpart B, C or F as applicable, or liquidation.

B. The Lender will negotiate in good faith in an attempt to resolve any problem and to permit the Borrower to cure a default, where reasonable. The Lender agrees that if liquidation of the account becomes imminent, the Lender will consider the Borrower of an Operating Loan Line of Credit for an Interest Rate Buydown under Exhibit C of Subpart B of 7 C.F.R., Part 1980, and request a determination of the Borrower's eligibility by FmHA. The Lender may not initiate foreclosure action on the line of credit until 60 days after a determination has been made with respect to the eligibility of the Borrower to participate in the Interest Rate Buydown Program.

April 10, 1989 Lender's Agreement at 3 (Exhibit 17 to February 14, 1996 Motion for Summary Judgment).

The July 18, 1989 Contract of Guarantee provides:

1. The agency formerly known as the FmHA has undergone several name changes, and is now known as the Rural Housing Service. For pur-

poses of this opinion, we refer to the agency as FmHA because all of the actions pertinent to this dispute occurred prior to the change in name.

### 1. *Line of Credit Servicing.*

Lender will be responsible for servicing the entire line of credit, and Lender will remain mortgagee and/or secured party of record. The Lender agrees that, if liquidation of the account becomes imminent, the Lender will consider the Borrower of an Operating Loan Line of Credit for an Interest Rate Buydown under Exhibit C of Subpart B of 7 C.F.R., Part 1980, and request a determination of the Borrower's eligibility by FmHA. The Lender may not initiate foreclosure action on the line of credit until 60 days after a determination has been made with respect to the eligibility of the Borrower to participate in the Interest Rate Buydown Program.

July 18, 1989 Contract of Guarantee at 1 (Exhibit 23 to February 14, 1996 Motion for Summary Judgment).

The plaintiffs began experiencing financial difficulties in 1991. On May 24, 1991, Robert Morgan, the FmHA County Supervisor, met with Bob Carroll, President of Commerce Bank, regarding the Littles' loans and financial situation. They discussed, *inter alia*, the possibility of a new guarantee with interest assistance. Following negotiations, Commerce Bank submitted loan applications to FmHA in order to re-finance the Littles' existing line of credit. Along with these applications, Commerce Bank also submitted to defendant applications for the interest assistance program and the interest rate buydown program.[2]

FmHA County Supervisor Robert Morgan met with Bob Carroll, President of Commerce Bank, and Mr. Little several times concerning the Littles' financial situation. On March 10, 1992, Mr. Morgan met with Bob Carroll of Commerce Bank. On May 8, 1992, Mr. Morgan met with Mr. Little, and explained the procedures regarding interest writedown or reduction of guaranteed loans. On May 22, 1992, Robert Morgan met with Bob Carroll of Commerce Bank and discussed a possible writedown or complete liquidation of the Littles' loans.

On July 10, 1992, two days prior to the scheduled maturation of plaintiffs' $400,000 note, the plaintiffs met with Bob Carroll of Commerce Bank and others at a mediation conference. The subject of this conference was the status of the Littles' loans and their financial situation. The Littles and Commerce Bank agreed that plaintiffs would present to the Bank a loan application with a cash flow plan by July 17, 1992. The Bank would, in turn, determine by July 22, 1992 whether to submit plaintiffs' application to FmHA or submit a liquidation plan to FmHA. Mr. Morgan agreed, on behalf of FmHA, to act on Commerce Bank's decision. The Littles' note to Commerce Bank in the amount of $400,000 matured on July 12, 1992. The Littles were then in default on the operating line of credit because the loan had matured. All funds became due on that date, and liquidation of the Littles' loans was imminent.

On August 4, 1992, Bob Carroll requested that FmHA extend the deadline for the Littles' submission of a plan from July 17, 1992 to August 17, 1992. The FmHA agreed to the proposed extension. As agreed, on that date, the plaintiffs submitted the documents, which included a plan involving interest assistance. On August 17, 1992, Commerce Bank rejected the plaintiffs' plan, and submitted a "Liquidation Plan" to FmHA to liquidate the Littles' loans. Commerce Bank did not present to FmHA the Littles' plan that had been rejected by the Bank's Board of Directors. Accordingly, FmHA made no

---

**2.** The Secretary of Agriculture is empowered to establish an interest rate reduction program for loans guaranteed by FmHA. 7 U.S.C. § 1999 (1994). The interest rate buydown program that was in effect when the documents at issue were executed involved participation by the lender and FmHA in reducing the interest rate for guaranteed loans. 7 C.F.R. pt.1980, subpt. B, Ex. D (1991). The interest rate buydown program, however, was replaced by the interest assistance program on February 28, 1991. 56 Fed.Reg.

8258 (1991) (to be codified at 7 C.F.R. pt.1980). Under the interest assistance program, any reduction of the interest rate for guaranteed loans is provided solely by FmHA. 7 C.F.R. pt.1980, subpt. B, Ex. D (1992).

The parties use the terms "interest rate buydown" and "interest assistance" interchangeably. Both programs require FmHA to determine a borrower's eligibility for interest rate reduction.

determination as to the eligibility for interest assistance of any plan concerning the Littles.

On September 8, 1992, FmHA approved the Liquidation Plan and on September 22, 1992, FmHA advised the Bank to proceed with the liquidation. On November 30, 1992, Commerce Bank filed foreclosure proceedings against plaintiffs in the District Court of Hughes County, Oklahoma. The Littles subsequently filed for federal bankruptcy protection and ultimately received a discharge prior to the foreclosure trial.

The Littles raised several affirmative defenses to foreclosure. Amongst these claims was that the Bank had failed to comply with certain conditions precedent to foreclosure that were required by FmHA. In the foreclosure proceedings, *Bank of Commerce v. Lloyd Little and Linda Little*, District Court of Hughes County, Oklahoma, No. C–92–138 (Feb. 10, 1997), the trial court rejected the Littles' affirmative defenses and found that the Bank of Commerce had a right to proceed with a foreclosure action on the plaintiffs' mortgage and line of credit note. The Court of Civil Appeals of the State of Oklahoma affirmed this decision on August 31, 1999.[3] *Commerce Bank of Wetumka v. Lloyd L. Little and Linda K. Little*, The Court of Civil Appeals, State of Oklahoma, No. 89,065 (Aug. 31, 1999). The Littles filed a petition for rehearing in the Court of Civil Appeals for the State of Oklahoma which was denied on December 13, 1999. A petition for certiorari in the Supreme Court of the State of Oklahoma was also filed and denied. Accordingly, the proceedings in the state courts of Oklahoma are now concluded.

The Littles filed their complaint before this court on August 31, 1995, wherein they allege that the United States, through the FmHA, breached its contractual obligation to make a determination of the Littles' eligibility for an interest rate buydown or consider the Littles for interest assistance. Plaintiffs also allege that the FmHA failed to meet with the Littles and the lender, Commerce Bank, before the Bank's filing of a foreclosure proceeding on November 30, 1992.

The government filed its answer on December 14, 1995. On February 14, 1996, the government moved to dismiss plaintiff's case for lack of subject matter jurisdiction and, in the alternative, for summary judgment. In an unpublished opinion, Judge Futey denied the government's alternative motions. *Lloyd Little and Linda Little v. United States*, No. 95–589C, slip op. (Fed.Cl. Nov.12, 1996). Judge Futey granted the government's motion to file an amended answer. The government filed its first amended answer on June 3, 1997, wherein it included an argument that plaintiff is collaterally estopped from pursuing its complaint by *The Bank of Commerce v. Lloyd Little and Linda Little*, District Court of Hughes County, Oklahoma, No. C–92–138 (Feb. 10, 1997).

The government filed a second motion for summary judgment on August 15, 1997. The plaintiffs filed their response on September 18, 1997. The government then filed its reply to plaintiffs' opposition to its motion for summary judgment on September 30, 1997. The present case was transferred to the undersigned on January 27, 1999. Oral argument was held on March 7, 2001.

The issue presently before this court is whether plaintiffs can establish that defendant violated the Lenders' Agreement and/or the Contract of Guarantee by failing to properly consider their request for interest assistance.

## DISCUSSION

### I. *Subject Matter Jurisdiction*

Judge Futey concluded in his November 12, 1996 opinion that the plaintiffs are third-party beneficiaries to both the Lender's Agreement and the Contract of Guarantee. *Little*, slip op. at 5–8. This court agrees with this determination. The Tucker Act, 28 U.S.C. § 1491(a)(1) (1994), affords jurisdiction where privity of contract exists between the party bringing suit and the United States. Accordingly, this court has subject

---

**3.** Proceedings in this case were stayed pending a final decision in plaintiffs' appeal of the February 10, 1997 decision.

matter jurisdiction over this matter pursuant to the Tucker Act.

## II. *Motion for Summary Judgment*

### A. *Standard of Review*

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule of the Court of Federal Claims 56(c). It is designed to ensure the " 'just, speedy and inexpensive determination of every action(4)27' " *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Federal Rule of Civil Procedure 1). Summary judgment is not appropriate where there are disputes over facts that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the burden of establishing that there is no genuine issue of material fact. *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). In evaluating a motion for summary judgment, all doubt over factual issues must be resolved in favor of the party opposing summary judgment. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed.Cir.1987). The non-moving party must, however, " 'do more than simply show that there is some metaphysical doubt as to the material facts' " to defeat a motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Thus, summary judgment will not be granted if "the dispute about a material fact is 'genuine.' " *Anderson*, 477 U.S. at 247, 106 S.Ct. 2505.

### B. *Merits*

**1. Claim of FmHA's failure to meet with the Littles and Commerce Bank**

In their complaint, the Littles allege that "Commerce Bank and FmHA failed and refused to schedule a meeting with [them] to resolve their problems prior to filing foreclosure." Compl. ¶ 25. They allege that the FmHA's failure to meet with them to resolve their loan problems prior to Commerce Bank's initiation of foreclosure proceedings violates the Lender's Agreement. The Lender's Agreement provides, in pertinent part:

X. *Defaults.*

A. The Lender will notify FmHA when a borrower is thirty (30) days past due on a payment and is unlikely to bring its account current within sixty (60) days, or if the Borrower has not met its responsibilities of providing the required financial statements to the Lender or is otherwise in default. The Lender will notify FmHA of the status of a Borrower's default on Form FmHA 1980–44, "Guaranteed Loan Borrower Default Status." *A meeting will be arranged by the Lender with the Borrower and FmHA to resolve the problem. Actions taken by the Lender with concurrence of FmHA may include but are not limited to any curative actions contained in either Subpart B, C or F as applicable, or liquidation.*

April 10, 1989 Lender's Agreement at 3 (Exhibit 17 to February 14, 1996 Motion for Summary Judgment) (emphasis added).

Judge Futey rejected plaintiffs' argument in his November 12, 1996 opinion. First, Judge Futey found the language in the Lender's Agreement requiring that "a meeting will be arranged by the Lender with the borrower and FmHA to resolve the problems" imposes no affirmative obligations on defendant to initiate or schedule any such meeting. *Little*, slip op. at 10. He found that this provision imposes the obligation to schedule the meeting on the Commerce Bank, not FmHA. *Id.* He further reasoned that even to the extent the provision may impose an obligation on FmHA, "any such obligation would have been satisfied by the conference of July 12, 1992, which was attended by plaintiffs, Mr. Morgan for defendant, and Mr. Carroll for Commerce Bank." [4]

---

4. The court notes that in the joint stipulations filed September 2, 1997 and signed by Babette

Patton, counsel of record for plaintiffs in this case, paragraph 17 states:

*Id.* This court agrees with Judge Futey's rejection of plaintiffs' claim that FmHA breached the Lender's Agreement by failing to meet with plaintiffs prior to Commerce Bank's initiation of foreclosure proceedings.

**2. Claim of FmHA's failure to determine the Littles' eligibility to participate in interest rate buydown or consider them for interest assistance prior to agreeing to foreclosure proceedings**

The Littles also allege that the Lender's Agreement and the Contract of Guarantee prohibit the lender from initiating foreclosure proceedings until a determination has been made by FmHA with respect to the eligibility of the borrower to participate in the interest rate buydown.

The Littles allege that the government breached the following provision of the April 10, 1989 Lender's Agreement:

X. *Defaults.*

. . .

B. The Lender will negotiate in good faith in an attempt to resolve any problem and to permit the Borrower to cure a default, where reasonable. *The Lender agrees that if liquidation of the account becomes imminent, the Lender will consider the Borrower of an Operating Loan Line of Credit for an Interest Rate Buydown under Exhibit C of Subpart B of 7 C.F.R., Part 1980, and request a determination of the Borrower's eligibility by FmHA. The Lender may not initiate foreclosure action on the line of credit until 60 days after a determination has been made with respect to the eligibility of the Borrower to participate in the Interest Rate Buydown Program.*

April 10, 1989 Lender's Agreement at 3 (Exhibit 17 to February 14, 1996 Motion for Summary Judgment) (emphasis added).

The Littles also contend that the government beached the following provision of the July 18, 1989 Contract of Guarantee:

On July 10, 1992, FmHA County Supervisor Morgan met with the Littles, Bob Carroll of Commerce Bank, and others at a mediation

1. *Line of Credit Servicing.*

Lender will be responsible for servicing the entire line of credit, and Lender will remain mortgagee and/or secured party of record. *The Lender agrees that, if liquidation of the account becomes imminent, the Lender will consider the Borrower of an Operating Loan Line of Credit for an Interest Rate Buydown under Exhibit C of Subpart B of 7 C.F.R., Part 1980, and request a determination of the Borrower's eligibility by FmHA. The Lender may not initiate foreclosure action on the line of credit until 60 days after a determination has been made with respect to the eligibility of the Borrower to participate in the Interest Rate Buydown Program.*

July 18, 1989 Contract of Guarantee at 1 (Exhibit 23 to February 14, 1996 Motion for Summary Judgment) (emphasis added).

The parties have stipulated that no determination of the Littles' eligibility for interest assistance was made when liquidation became imminent. When liquidation of the Littles' account became imminent, Commerce Bank did not present to FmHA the Littles' plan that had been rejected by the Bank's Board of Directors on August 14, 1992. Accordingly, FmHA made no determination as to the Littles' eligibility for interest assistance. The "crux of the Littles' action is that FmHA approved a liquidation plan submitted by the Bank and allowed the Bank to foreclose on the Littles' property without first making a determination as to whether the Littles were eligible for interest assistance." Plaintiffs' Response to Defendant's Motion for Summary Judgment at 3. Put another way, it is essentially plaintiffs' position that FmHA consideration of the Littles for interest assistance was a condition precedent to FmHA approval of the Bank's liquidation plan.

The government's position is that neither the provisions of the Lender's Agreement, the Contract of Guarantee, nor the agency's regulations require that FmHA agree to and provide interest assistance for a borrower.

conference. At the meeting, the participants discussed the status of the Littles' loans and their financial situation.

In this case, the Bank rejected the Littles' refinancing plan and therefore did not submit it to the FmHA. Accordingly, the government argues that the FmHA was under no contractual obligation to examine the Littles' refinancing plan when the Bank had already rejected it. It further argues this interpretation is consistent with the parties' understanding of their regulatory and contractual obligations; and this conclusion is compelled by the regulatory scheme.

 When interpreting a contract, its language must be given the meaning that a "reasonably intelligent person acquainted with the contemporaneous circumstances" would reach. *Allied Technology Group, Inc. v. United States,* 39 Fed.Cl. 125, 138 (1997). Whenever possible, courts look to the plain language or plain meaning in the interpretation of contractual documents. *Aleman Food Servs., Inc. v. United States,* 994 F.2d 819, 822 (Fed.Cir.1993) (citing *Gould, Inc. v. United States,* 935 F.2d 1271, 1274 (Fed.Cir. 1991)). In this case, the language of the Lender's Agreement and the Contract of Guarantee places the contractual obligation to consider the borrower for an interest rate buydown and request a determination of the borrower's eligibility by FmHA squarely on the Lender. Both of these documents specify that the Bank of Commerce is the Lender. The agreements provide:

> The *Lender* agrees that, if liquidation of the account becomes imminent, the *Lender* will consider the Borrower of an Operating Loan Line of Credit for an Interest Rate Buydown under Exhibit C of Subpart B of 7 C.F.R., Part 1980, and request a determination of the Borrower's eligibility by FmHA. The *Lender* may not initiate foreclosure action on the line of credit until 60 days after a determination has been made with respect to the eligibility of the Borrower to participate in the Interest Rate Buydown Program.

April 10, 1989 Lender's Agreement at 3 (Exhibit 17 to February 14, 1996 Motion for Summary Judgment) (emphasis added); July 18, 1989 Contract of Guarantee at 1 (Exhibit 23 to February 14, 1996 Motion for Summary Judgment) (emphasis added).

There is no suggestion in either this language (on which plaintiffs base their entire case) or in either contract that the FmHA must ensure that the *Lender* satisfied *its* contractual obligations prior to approving the Bank's foreclosure plan. The plain language of the contracts belies plaintiffs' contention to the contrary.[5]

This interpretation of the contracts at issue is also consistent with the applicable regulatory scheme. There is no regulation cited by the parties or of which this court is aware that requires the FmHA to consider a borrower for interest assistance prior to approving foreclosure proceedings. *See* 7 C.F.R. § 1980.146. There is also no regulation of which this court is aware that requires FmHA to ensure the lender has comported with its contractual obligations as a condition precedent to its approval of foreclosure proceedings. *See id.* Furthermore, the documentation as presented to the court reflects that FmHA fully comported with the applicable regulations concerning foreclosure.

As previously stated, the Littles defaulted on their $400,000 note to Commerce Bank on July 12, 1992. At that point, liquidation became imminent. At a July 10, 1992 mediation conference, FmHA County Supervisor Robert Morgan, Bob Carroll of Commerce Bank, and the Littles discussed the status of the Littles' loans and their financial situation. The Littles agreed to present to the bank a loan application, including a cash flow plan, by July 17, 1992. The Bank agreed to review the application and decide whether to submit the application or a liquidation plan to FmHA. Mr. Morgan, acting on behalf of FmHA, agreed to act on the Bank's decision in accordance with FmHA's procedures. On August 14, 1992, the Board of Directors of Commerce Bank rejected the Littles' liquidation plan. Commerce Bank did not present to FmHA the Littles' plan that had been rejected by the Bank's Board of Directors. For this reason, FmHA made no determina-

---

5. This interpretation remains consistent with Judge Futey's opinion. Judge Futey did not make a determination as to FmHA's duty to consider the Littles for interest assistance prior to approving the Bank's foreclosure plan.

**850**

tion as to the eligibility for interest assistance of any plan concerning the Littles.

It would defy logic to require the Bank to submit to FmHA a plan that it has already decided to reject where both the contract and the regulations contemplate the Bank, not FmHA, issuing a loan. In this instance, the Bank declined to restructure the Littles' $400,000 loan. So when the Bank concluded on August 14, 1992 that it would not issue the Littles any more loans, the question of FmHA consideration of the Littles for interest assistance prior to approving foreclosure proceedings effectively became moot because there could be no interest if there were no loan.

Because the court has found that FmHA was not required to ensure that the lender comported with its contractual obligations as a condition precedent to its approval of foreclosure proceedings, there is no need to address the issue of whether Commerce Bank breached either the Contract of Guarantee or the Lender's Agreement. Accordingly, there is no need for this court to address the question of whether the plaintiffs are collaterally estopped from raising the issue of whether Commerce Bank breached either the Contract of Guarantee, the Lender's Agreement, or both, based upon the February 10, 1997 final judgment in *Bank of Commerce v. Lloyd Little and Linda Little*, District Court of Hughes County, Oklahoma, No. C–92–138.

### CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that:

(1) The Defendant's Motion for Summary Judgment is **GRANTED;**

(2) The Clerk is directed to enter final judgment dismissing the complaint in this action; and

(3) Each party must bear its own costs.

**IT IS SO ORDERED.**